No. 22-3772

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

ALLSTATES REFRACTORY CONTRACTORS, LLC,

*Plaintiff-Appellant*,

v.

MARTIN J. WALSH, et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of Ohio, Western Division
(No. 3:21-cv-01864, Hon. Jack Zouhary)

_____

## BRIEF OF AMICUS CURIAE
## AMERICANS FOR PROSPERITY FOUNDATION
## IN SUPPORT OF APPELLANT ALLSTATES REFRACTORY
## CONTRACTORS, LLC AND REVERSAL

_____

Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
571.329.4529
mpepson@afphq.org

November 14, 2022          *Attorney for Amicus Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-3772            Case Name: AllstatesRefractoryContractors v. Walsh

Name of counsel:  Michael Pepson

Pursuant to 6th Cir. R. 26.1, Americans for Prosperity Foundation
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____ November 14, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Michael Pepson

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................i

TABLE OF AUTHORITIES...............................................................ii

INTEREST OF *AMICUS CURIAE* ....................................................1

SUMMARY OF ARGUMENT..............................................................1

ARGUMENT ....................................................................................3

I.   The OSH Act Grants Unelected Administrative Officials Sweeping Power to Make Policy Decisions on Important Subjects ...............................................3

II.  The OSH Act Unconstitutionally Delegates Legislative Power to OSHA ....6

A. The Separation of Legislative, Executive, and Judicial Power Protects Liberty…........................................................................................6

B. The Constitution Bars Congress from Transferring Its Legislative Power....8

C. The OSH Act Lacks An Intelligible Principle Constraining OSHA's Discretion to Make Legislative Choices .........................................11

III. The Time Has Come to Enforce the Separation of Powers ...........................15

A. This Question of First Impression Should Be Analyzed Against the Backdrop of the Constitution's Text and Original Public Meaning…...........................15

B. Promises By OSHA to Behave Responsibly Are Unavailing…....................17

C. Constitutional Avoidance Cannot Save the Statute…. ...............................19

IV. Objections to Enforcement of the Separation of Powers Lack Merit ...........20

CONCLUSION  ..............................................................................22

CERTIFICATE OF COMPLIANCE  ..................................................23

CERTIFICATE OF SERVICE ...........................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ....................................................................................6, 9

*Am. Textile Mfrs. Inst. v. Donovan*,
  452 U.S. 490 (1981) ........................................................................................14

*Bond v. United States*,
  564 U.S. 211 (2011) ..........................................................................................7

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ......................................................................................7

*DOT v. Ass'n of Am. R.R.*,
  575 U.S. 43 (2015) ...............................................................................9, 11, 12

*Edmo v. Corizon, Inc.*,
  949 F.3d 489 (9th Cir. 2020)...........................................................................17

*Encino Motorcars, LLC v. Navarro DOT*,
  138 S. Ct. 1134 (2018) ....................................................................................13

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ....................................................................................14

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ....................................................................................7, 21

*Garza v. Idaho*,
  139 S. Ct. 738 (2019) ......................................................................................16

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) ................................................5, 6, 7, 10, 11, 12, 15

*Indus. Union Dep't, AFL-CIO v. API*,
  448 U.S. 607 (1980) .............................................................................5, 9, 13, 14

*INS v. Chadha*,
  462 U.S. 919 (1983) ..........................................................................................8

*Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron*
    *Workers, Local 229, AFL-CIO*,
    974 F.3d 1106 (9th Cir. 2020) ............................................................. 16

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers v.*
    *OSHA*,
    938 F.2d 1310 (D.C. Cir. 1991) ..................................................... 3, 18

*Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am.*,
    *UAW v. OSHA*,
    37 F.3d 665 (D.C. Cir. 1994) ............................................... 14, 18, 19

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ................................................. 14, 15, 17

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ......................................................................... 19

*J.W. Hampton, Jr., & Co. v. United States*,
    276 U.S. 394 (1928) ........................................................................... 12

*Kelly Springfield Tire Co. v. Donovan*,
    729 F.2d 317 (5th Cir. 1984) ............................................................. 14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ....................................................................... 18

*Marshall Field & Co. v. Clark*,
    143 U.S. 649 (1892) ........................................................................... 10

*McCulloch v. Maryland*,
    17 U.S. 316 (1819) ............................................................................... 7

*MCP No. 165 v. U.S. DOL*,
    20 F.4th 264 (6th Cir. 2021) ............................................................... 3

*Michigan v. EPA*,
    576 U.S. 743 (2015) ........................................................................... 13

*Mistretta v. United States*,
    488 U.S. 361 (1989) ........................................................................... 11

iii

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................ 7

*Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*,
    142 S. Ct. 661 (2022) .................................................. 5, 7, 8, 9, 20

*Paul v. United States*,
    140 S. Ct. 342 (2019) ........................................................... 9, 15

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) .................................................................. 8

*Rop v. Fed. Hous. Fin. Agency*,
    50 F.4th 562 (6th Cir. Oct. 2022) ......................................... 8, 16

*SeaWorld of Fla., LLC v. Perez*,
    748 F.3d 1202 (D.C. Cir. 2014) ............................................... 6

*Shankland v. Washington*,
    30 U.S. 390 (1831) ............................................................... 10

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020) ......................................................... 19

*Texas v. Rettig*,
    993 F.3d 408 (5th Cir. 2021) ......................................... 7, 15, 16

*Tiger Lily, LLC v. HUD*,
    5 F.4th 666 (6th Cir. 2021) ....................................... 10, 20, 21

*United States v. Gonzales*,
    520 U.S. 1 (1997) .................................................................. 4

*United States v. Nichols*,
    784 F.3d 666 (10th Cir. 2015) ............................................ 4, 12

*USW v. Marshall*,
    647 F.2d 1189 (D.C. Cir. 1980) ......................................... 13, 14

*Wayman v. Southard*,
    23 U.S. (10 Wheat.) 1 (1825) ................................... 3, 9, 11, 12

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ..................................................................2, 9, 20

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ......................................................12, 17, 18, 19

**Constitution**

U.S. Const. Art. I, § 1 .......................................................................2, 12

**Statutes**

29 U.S.C. § 651(b).................................................................................3

29 U.S.C. § 651(b)(3).............................................................................4

29 U.S.C. § 652(5).................................................................................5

29 U.S.C. § 652(8).............................................................................5, 13

29 U.S.C. § 654(a)(2).............................................................................5

29 U.S.C. § 655(b).........................................................................4, 5, 20

29 U.S.C. § 666 .....................................................................................5

**Federal Register**

54 Fed. Reg. 36,644 (Sept. 1, 1989)......................................................18

58 Fed. Reg. 16,612, (Mar. 30, 1993) ...................................................18

**Rules**

FRAP 29(a)(4)(E).................................................................................1

**Other Authorities**

Brett M. Kavanaugh,
    *Our Anchor for 225 Years and Counting: The Enduring Significance of
    the Precise Text of the Constitution*,
    89 Notre Dame L. Rev. 1907 (2014)...................................................8

Cass R. Sunstein,
*Is OSHA Unconstitutional?*,
94 Va. L. Rev. 1407 (2008).........................................................3, 4, 5, 12, 17, 20

Gary Lawson,
*Delegation and Original Meaning*,
88 Va. L. Rev. 327 (2002).....................................................................10

Ilan Wurman,
*Nondelegation at the Founding*,
130 Yale L.J. 1490 (2021)....................................................................11

Jesse M. Cross & Abbe R. Gluck,
*The Congressional Bureaucracy*,
168 U. Pa. L. Rev. 1541 (2020) ..........................................................21

John Locke, Second Treatise of Government, §141 ...............................11

Larry Alexander & Saikrishna Prakash,
*Reports of the Nondelegation Doctrine's Death Are Greatly
Exaggerated*,
70 U. Chi. L. Rev. 1297 (2003)...........................................................11

Ronald Cass,
*Delegation Reconsidered: A Delegation Doctrine for the Modern
Administrative State*,
40 Harv. J. L. & Pub. Pol'y 147 (2016) .............................................10

The Federalist No. 75 (Hamilton) ........................................................11

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas include the separation of powers and constitutionally limited government, as well as bringing the administrative state in line with the U.S. Constitution. As part of this mission, AFPF appears as *amicus curiae* before state and federal courts.

## SUMMARY OF ARGUMENT

This case is not about what constitutes sound public policy. It is about which branch of government, under our constitutional structure, is entitled to make major policy decisions of vast political and economic importance, and by what process. At the federal level, the answer is Congress, through duly enacted legislation, subject to constitutional constraints.

In this country, all government power must flow from its proper source: We the People. Our system of government relies on the consent of the governed,

---

[1]All parties have consented to the filing of this brief.  Pursuant to FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF authored this brief in whole or in part, and no counsel or party other than AFPF made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

memorialized in the Constitution. Our Constitution exclusively tasks the People's elected representatives with answering major policy questions. And under the Constitution, the political branches may only do so through duly enacted legislation that survives bicameralism and presentment, a deliberately difficult process designed to ensure such laws reflect broad political consensus.

Toward this end, the Constitution flatly prohibits Congress from delegating *any* of its legislative power to other entities: "*All* legislative Powers herein granted shall be vested in a Congress of the United States[.]" U.S. Const. Art. I, § 1 (emphasis added). Congress is barred from divesting itself of power the Constitution exclusively vests in it. After all, unelected people are not allowed to make law in this country through administrative edict. For "the Constitution does not authorize agencies to use pen-and-phone regulations as substitutes for laws passed by the people's representatives." *West Virginia v. EPA*, 142 S. Ct. 2587, 2626 (2022) (Gorsuch, J., concurring).

Here, Congress has done that which the Constitution prohibits by delegating to unelected officials housed within an extraconstitutional administrative body legislative power to make important public policy choices of vast political and economic importance, regulating wide swaths of the entire private economy. There is no way to sweep this constitutional disorder under the rug. This Court should answer the squarely presented nondelegation question of first impression by

rejecting Congress's flawed legislative handiwork and enforcing the separation of powers. Congress is not allowed to evade political accountability by punting its legislative duties to other entities, as it did in the OSH Act. And the sky will not fall if this Court enforces the Constitution's original public meaning.

## ARGUMENT

### I.    The OSH Act Grants Unelected Administrative Officials Sweeping Power to Make Policy Decisions on Important Subjects.

The OSH Act delegates to OSHA sweeping legislative authority to make major policy choices of vast political and economic significance on "important subjects." *See Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825) (Marshall, C.J.). Congress enacted the OSH Act in 1970 with the amorphous goal of "assur[ing] so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). And "the scope of the regulatory program" at issue "is immense, encompassing all American enterprise." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. OSHA*, 938 F.2d 1310, 1317 (D.C. Cir. 1991). Indeed, "OSHA covers essentially all American workers[.]" Cass R. Sunstein, *Is OSHA Unconstitutional?*, 94 Va. L. Rev. 1407, 1431 (2008); *see also MCP No. 165 v. U.S. DOL*, 20 F.4th 264, 270 (6th Cir. 2021) (Sutton, C.J., dissenting from denial of initial hearing en banc).

Congress, however, punted the major policy choices necessary to achieve this broad, abstract aim to unelected Executive officials, "authorizing the Secretary of

Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. § 651(b)(3). As Professor Cass Sunstein has explained, that was precisely the point: "When the statute was originally enacted in 1970, Congress did not seriously grapple with" the difficult policy questions raised by occupational safety and health regulation. Sunstein, 94 Va. L. Rev. at 1431. "Instead, it was largely content simply to recognize the existence of a problem and the need for a regulatory solution." *Id.*

> Imagine that Congress creates a federal agency to deal with a large problem, one that involves a significant part of the national economy. Suppose that Congress instructs the agency: Do what you believe is best. Act reasonably and appropriately. Adopt the legal standard that you prefer, all things considered. Suppose, finally, that these instructions lack clear contextual referents, such as previous enactments or judicial understandings, on which the agency might build. . . . [T]he core provision of one of the nation's most important regulatory statutes—the Occupational Safety and Health Act ("OSHA")—is not easy to distinguish from the hypothesized statute.

*Id.* at 1407. In other words, "Congress pointed to a problem that needed fixing and more or less told the Executive to go forth and figure it out." *See United States v. Nichols*, 784 F.3d 666, 674 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc).

Specifically, Section 6(b) of the OSH Act grants the Secretary sweeping legislative power to "promulgate . . . any occupational safety or health standard,"[2]

---

[2] "Read naturally, the word 'any' has an expansive meaning[.]" *United States v. Gonzales*, 520 U.S. 1, 5 (1997).

4

29 U.S.C. § 655(b), as binding law that employers across the United States must comply with, *id.* § 654(a)(2); *see id.* § 652(5) (defining "employer" broadly as "a person engaged in a business affecting commerce who has employees"), or suffer steep civil and criminal consequences, *see id.* § 666.

Under the statute, OSHA may do this whenever "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." *Id.* § 652(8); *see Nat'l Fed'n of Indep. Bus. v. DOL, OSHA*, 142 S. Ct. 661, 663 (2022). Other than that, the statute's text does not cabin the agency's power to set permanent safety standards, providing no meaningful guidance as to what makes a safety standard "reasonably necessary or appropriate." Nor did Congress otherwise provide "meaningful guidance. It did not, for example, reference any pre-existing common law [of workplace safety]. And it did not announce rules contingent on executive fact-finding." *Gundy v. United States*, 139 S. Ct. 2116, 2137 (2019) (Gorsuch, J., dissenting). As Chief Justice Rehnquist put it: "It is difficult to imagine a more obvious example of Congress simply avoiding a choice which was both fundamental for purposes of the statute and yet politically so divisive that the necessary decision or compromise was difficult, if not impossible, to hammer out in the legislative forge." *Indus. Union Dep't, AFL-CIO v. API,* 448 U.S. 607, 687 (1980) (Rehnquist, J., concurring in judgment); *see also* Sunstein, 94 Va. L. Rev. at 1448 ("No other

federal regulatory statute confers so much discretion on federal administrators, at least in any area with such broad scope[.]").

This gives OSHA untrammeled discretion to make major policy decisions regulating private conduct across the entire economy. Unsurprisingly, the sweeping power the OSH Act grants to OSHA is ripe for abuse. *See, e.g., SeaWorld of Fla., LLC v. Perez,* 748 F.3d 1202, 1213 (D.C. Cir. 2014) (upholding OSHA's effective ban of SeaWorld whale shows). To borrow Justice Cardozo's words, "[t]he delegated power of legislation which has found expression in this code is not canalized within banks that keep it from overflowing. It is unconfined and vagrant. . . . This is delegation running riot." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 551, 553 (1935) (Cardozo, J., concurring).

This arrangement runs roughshod over the Constitution's separation of powers. And it breaks the Constitution's promise that only the People's elected representatives in Congress may make legislative choices restricting their liberty and imposing obligations upon them.

## II.    The OSH Act Unconstitutionally Delegates Legislative Power to OSHA.

### A. The Separation of Legislative, Executive, and Judicial Power Protects Liberty.

It bears reminding that "[o]ur founding document begins by declaring that 'We the People . . . ordain and establish this Constitution.' At the time, that was a radical claim, an assertion that sovereignty belongs not to a person or institution or

6

class but to the whole of the people." *Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 499 (2010) ("Our Constitution was adopted to enable the people to govern themselves, through their elected leaders.").

Under the Constitution, "[n]ot only must the federal government properly invoke a constitutionally enumerated source of authority to regulate . . . . It must also act consistently with the Constitution's separation of powers." *NFIB v. OSHA*, 142 S. Ct. at 667 (Gorsuch, J., concurring) (citing *McCulloch v. Maryland*, 17 U.S. 316 (1819)). "Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others. . . . The structural principles secured by the separation of powers protect the individual as well." *Bond v. United States*, 564 U.S. 211, 222 (2011). "The purpose of the separation and equilibration of powers in general . . . [is] not merely to assure effective government but to preserve individual freedom." *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting); *see Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021) ("[T]he separation of powers is designed to preserve the liberty of all the people.").

This separation "might seem inconvenient and inefficient to those who wish to maximize government's coercive power." *See Texas v. Rettig,* 993 F.3d 408, 409 (5th Cir. 2021) (Ho, J., joined by Jones, Smith, Elrod, and Duncan, JJ., dissenting from denial of rehearing en banc). But "[t]o the Framers, the separation of powers

7

and checks and balances were more than just theories. They were practical and real protections for individual liberty in the new Constitution." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 118 (2015) (Thomas, J., concurring in the judgment); *see also Rop v. Fed. Hous. Fin. Agency*, 50 F.4th 562, 587 (6th Cir. 2022) (Thapar, J., concurring in part, dissenting in part) (noting "the Constitution's structural protections are as important for individual liberty as amendments like the First or Fourth."). "The choices . . . made in the Constitutional Convention impose burdens on governmental processes that often seem clumsy, inefficient, even unworkable, but those hard choices were consciously made by men who had lived under a form of government that permitted arbitrary governmental acts to go unchecked." *INS v. Chadha*, 462 U.S. 919, 959 (1983).

Indeed, "[t]he primary protection of individual liberty in our constitutional system comes from . . . the separation of the power to legislate from the power to enforce from the power to adjudicate." Brett M. Kavanaugh, *Our Anchor for 225 Years and Counting: The Enduring Significance of the Precise Text of the Constitution*, 89 Notre Dame L. Rev. 1907, 1915 (2014).

## B. The Constitution Bars Congress from Transferring Its Legislative Power.

Nor may Congress duck the Constitution's accountability checkpoints by divesting itself of its legislative responsibilities. *See also NFIB v. OSHA,* 142 S. Ct. at 669 (Gorsuch, J., concurring) ("The nondelegation doctrine ensures democratic

accountability by preventing Congress from intentionally delegating its legislative powers to unelected officials."). Indeed, "[p]ermitting Congress to divest its legislative power to the Executive Branch would 'dash [this] whole scheme.' Legislation would risk becoming nothing more than the will of the current President, or, worse yet, the will of unelected officials barely responsive to him." *West Virginia v. EPA*, 142 S. Ct. at 2618 (Gorsuch, J., concurring) (quoting *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 61 (2015) (Alito, J., concurring)).

As Chief Justice Marshall observed: "It will not be contended that Congress can delegate . . . powers which are strictly and exclusively legislative." *Wayman*, 23 U.S. (10 Wheat.) at 42; *see also Schechter Poultry*, 295 U.S. at 529 ("Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."). Instead, the Constitution requires "important subjects . . . must be entirely regulated by the legislature itself[.]" *Wayman* 23 U.S. (10 Wheat.) at 43; *see also Paul v. United States*, 140 S. Ct. 342, 342 (2019) (Kavanaugh, J., statement respecting denial of certiorari). In other words, "important choices of social policy" must be "made by Congress, the branch of our Government most responsive to the popular will." *Indus. Union Dep't*, 448 U.S. at 685 (Rehnquist, J., concurring in judgment). "It is the hard choices, and not the filling in of the blanks, which must be made by the elected representatives of the people." *Id.* at 687 (Rehnquist, J., concurring in judgment).

Accordingly, Congress cannot delegate its legislative power to other entities, such as OSHA. *See Shankland v. Washington*, 30 U.S. 390, 395 (1831) (Story, J.) ("[T]he general rule of law is, that a delegated authority cannot be delegated."). Indeed, "[i]f Congress could pass off its legislative power to the executive branch, the '[v]esting [c]lauses, and indeed the entire structure of the Constitution,' would 'make no sense.'"[3] *Gundy*, 139 S. Ct. at 2134– 35 (Gorsuch, J., dissenting) (quoting Gary Lawson, *Delegation and Original Meaning*, 88 Va. L. Rev. 327, 340 (2002)).

"[I]t would frustrate 'the system of government ordained by the Constitution' if Congress could merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals." *Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting) (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892) (Harlan, J.)). For "[b]y shifting responsibility to a less accountable branch, Congress protects itself from political censure—and deprives the people of the say the framers intended them to have." *Tiger Lily, LLC v. HUD*, 5 F.4th 666, 674 (6th Cir. 2021) (Thapar, J., concurring). Indeed, if Congress could delegate its legislative duties to other entities it would breach the social compact on which our Constitution rests. "The nondelegation principle can be traced to John Locke's Second Treatise,

---

[3] "From the standpoint of constitutional design, the critical point is that redistribution of authority from one entity to another . . . is at odds with the inclusion of specific procedures for each branch's and officer's functions." Ronald Cass, *Delegation Reconsidered: A Delegation Doctrine for the Modern Administrative State*, 40 Harv. J. L. & Pub. Pol'y 147, 155 (2016).

which was deeply influential on the Founding generation." Ilan Wurman, *Nondelegation at the Founding*, 130 Yale L.J. 1490, 1518 (2021); *see Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting). As John Locke explained: "[W]hen the people have said, We will submit to rules, and be governed by laws made by such men, and in such forms, no body else can say other men shall make laws for them[.]" John Locke, Second Treatise of Government, §141. This means that "the legislative can have no power to transfer their authority of making laws, and place it in other hands." *Id.*; *see also* Larry Alexander & Saikrishna Prakash, *Reports of the Nondelegation Doctrine's Death Are Greatly Exaggerated*, 70 U. Chi. L. Rev. 1297, 1322 (2003).

### C. The OSH Act Lacks An Intelligible Principle Constraining OSHA's Discretion to Make Legislative Choices.

As discussed above, "[s]trictly speaking, there is *no* acceptable delegation of legislative power." *Mistretta v. United States*, 488 U.S. 361, 419–20 (1989) (Scalia, J., dissenting) (emphasis in original).[4] This raises the question what is "legislative power" that Congress may not delegate. To be sure, "[t]he line has not been exactly drawn which separates those important subjects, which must be entirely regulated

---

[4] "When it came to the legislative power, the framers understood it to mean the power to adopt generally applicable rules of conduct governing future actions by private persons[.]" *Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting); *see Ass'n of Am. R.R.*, 575 U.S. at 76 (Thomas, J., concurring in judgment) (similar); *see also* Federalist No. 75 ("The essence of the legislative authority is to enact laws, or, in other words, to prescribe rules for the regulation of the society[.]").

11

by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details." *Wayman*, 23 U.S. (10 Wheat.) at 43. "But the inherent difficulty of line-drawing is no excuse for not enforcing the Constitution." *Ass'n of Am. R.R.*, 575 U.S. at 61 (Alito, J., concurring); *see id.* at 86 (Thomas, J., concurring) ("It may never be possible perfectly to distinguish between legislative and executive power, but that does not mean we may look the other way[.]"). And "the difficulty of the inquiry doesn't mean it isn't worth the effort." *Nichols*, 784 F.3d at 671 (Gorsuch, J., dissenting from denial of rehearing en banc).

Under the Supreme Court's current jurisprudence,[5] "Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). Here, "everything turns on whether the phrase 'reasonably necessary or appropriate' sets out an intelligible principle." Sunstein, 94 Va. L. Rev. at 1429. It does not. That is no principle at all, let alone an intelligible one.

---

[5] "[T]h[e] mutated version of the 'intelligible principle' remark" in *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928), that forms the basis of the "intelligible principle" test "has no basis in the original meaning of the Constitution, in history, or even in the decision from which it was plucked." *Gundy*, 139 S. Ct. at 2139 (Gorsuch, J., dissenting). Instead, the Constitution "speaks in much simpler terms: '*All* legislative Powers herein granted shall be vested in a Congress.'" *Whitman*, 531 U.S. at 487 (Thomas, J., concurring) (quoting U.S. Const. Art. 1, § 1).

To begin, "[o]ne does not need to open up a dictionary in order to realize the capaciousness of this phrase." *See Michigan v. EPA*, 576 U.S. 743, 752 (2015) (addressing "appropriate *and* necessary" (emphasis added)). Worse, Congress deliberately chose to write this provision in the disjunctive, meaning that OSHA may issue safety standards that are *either* "reasonably necessary *or* appropriate." 29 U.S.C. § 652(8). Indeed, 29 U.S.C. § 652(8) speaks in the disjunctive "or" no less than *six* times in a single sentence, underscoring the statute's clearly intended breadth. *See also Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1141 (2018) (statute that "uses the disjunctive word 'or' three times" "bespeaks breadth").

To be sure, the district court found "[t]he [Supreme] Court outlined in *Benzene* that 'safe' in this context requires OSHA to make 'a threshold finding that a place of employment is unsafe—in the sense that significant risks are present,'" citing the plurality opinion.[6] Op., R.30, PageID#374 (quoting *Indus. Union Dep't*, 448 U.S. at 642 (plurality)). Not necessarily so. *See* Allstates Br. 39–41. As the D.C. Circuit observed: "[I]n stating that § 3(8) of the Act did not, as the plurality believed, impose a general check on OSHA's exercise of its standard setting duty under § 6(b)(5), Justice Rehnquist actually created a five-person majority, along with the dissenters, Justices Marshall, Brennan, White, and

---

[6] But for the district court's mistaken conclusion that the OSH Act's text requires a finding of "significant risk" for permanent safety standards, language in the opinion suggests it may have found a nondelegation violation. *See* Op., R.30, PageID#375.

Blackmun, for the view that § 3(8) *does not* place on OSHA any threshold burden of proving 'significant harm.'"[7] *USW v. Marshall*, 647 F.2d 1189, 1245 n.84 (D.C. Cir. 1980) (citing *Indus. Union Dep't,* 448 U.S. at 681 (Rehnquist, J., concurring in judgment); *id.* at 688 (Marshall, J., joined by Brennan, White, Blackmun, JJ., dissenting) (emphasis added)); *accord Kelly Springfield Tire Co. v. Donovan,* 729 F.2d 317, 323 n.9 (5th Cir. 1984) ("[I]t appears that a majority of the [*Benzene*] Court disagrees with the [the plurality's "significant risk"] dicta.").

But even if it were otherwise the OSH Act's grant of sweeping authority to unelected administrators housed within an extraconstitutional administrative body to regulate the entire private economy—and unfettered discretion to choose how to do so—fails the intelligible principle test.[8] Whatever the precise line between the exercise of executive and legislative power might be, the OSH Act is beyond it. "If the intelligible principle standard means anything, it must mean that a total absence

---

[7] To be sure, the Supreme Court has stated in dicta grounded in "legislative history" that "any standard that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act." *Am. Textile Mfrs. Inst. v. Donovan*, 452 U.S. 490, 513 n.31 (1981) (*Cotton Dust*). But "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018). And this language is nowhere to be found in the text of the statute.

[8] As the D.C. Circuit has suggested, layering the *Benzene* plurality's extratextual "significant risk" gloss coupled with the "feasibility" dicta from *Cotton Dust* onto the OSH Act's text would be insufficient to cure the statute's core constitutional problem. *See Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am., UAW v. OSHA*, 37 F.3d 665, 668–69 (D.C. Cir. 1994).

of guidance is impermissible under the Constitution." *Jarkesy v. SEC*, 34 F.4th 446, 462 (5th Cir. 2022), rehearing en banc denied, 2022 U.S. App. LEXIS 29433 (5th Cir. Oct. 21, 2022).  Such is the case here.[9]

### III.    The Time Has Come to Enforce the Separation of Powers.

#### A. This Question of First Impression Should Be Analyzed Against the Backdrop of the Constitution's Text and Original Public Meaning.

"Admittedly, the nondelegation doctrine has been more honored in the breach than in the observance." *Rettig*, 993 F.3d at 410 (Ho, J., dissenting from denial of rehearing en banc). But "judges swear an oath to uphold the Constitution, consistent of course with a judicial system based on precedent. That should mean that [judges] decide every case faithful to the text and original understanding of the Constitution, to the maximum extent permitted by a faithful reading of binding precedent." *Id.* at 409 (Ho, J., dissenting from denial of rehearing en banc). That resonates here.

To be sure, this Court is bound by existing Supreme Court precedent permitting delegation of regulatory powers, constitutionally suspect as it may be. *See Gundy,* 139 S. Ct. at 2131 (Gorsuch, J., dissenting); *id.* at 2130–31 (Alito, J., concurring in judgment); *Paul*, 140 S. Ct. at 342 (Kavanaugh, J., statement respecting denial of certiorari). But here, the constitutional question before this

---

[9] If the delegation at issue here passes muster under the intelligible principle test, that test—which itself strays from the Constitution's original public meaning— should be revisited.

Court is of first impression,[10] and this Court should decide it based on the original public meaning of the Constitution. After all, "[t]he words of the Constitution are not suggestions or mere formalities." *Rop*, 50 F.4th at 577 (Thapar, J., concurring in part, dissenting in part). And as Judge Ho put it: "[I]f [courts] are forced to choose between upholding the Constitution and extending precedent in direct conflict with the Constitution, the choice should be clear: '[O]ur duty [is] to apply the Constitution—not extend precedent.' *Rettig*, 993 F.3d at 417 (Ho, J., dissenting from denial of rehearing en banc) (citation omitted).

So too here. This Court should interpret "precedent that has been eroded by more recent jurisprudence" in light of the Constitution's text, structure, and original understanding, *see Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229, AFL-CIO*, 974 F.3d 1106, 1116–17 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc) (citation omitted), and "tread carefully before extending it," *see id.* (quoting *Garza v. Idaho*, 139 S. Ct. 738, 756 (2019) (Thomas, J., dissenting)).

Accordingly, this Court should decline to further expand Supreme Court precedent blessing extraconstitutional delegation of Congress's legislative power to administrative bodies. For while courts must "faithfully follow" Supreme Court

---

[10] "The [Supreme] Court has not yet addressed the meaning of 'reasonably necessary or appropriate[.]'" Op., R.30, PageID#374. Nor has this Court.

precedents, courts "should resolve questions about the scope of those precedents in light of and in the direction of the constitutional text and constitutional history." *Edmo v. Corizon, Inc.*, 949 F.3d 489, 506 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc) (cleaned up). Here, that direction shows the OSH Act unconstitutionally delegates legislative power to an administrative body.[11]

### B. Promises By OSHA to Behave Responsibly Are Unavailing.

Any effort by OSHA to save the statute by proposing a limiting construction or promising to behave responsibly should be rejected out of hand. The Supreme Court "ha[s] never suggested that an agency can cure an unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute." *Whitman*, 531 U.S. at 472. "The very choice of which portion of the power to exercise—that is to say, the prescription of the standard that Congress had omitted— would *itself* be an exercise of the forbidden legislative authority." *Id.* at 473. Thus, "[w]hether the statute delegates legislative power is a question for the courts, and an agency's voluntary self-denial has no bearing upon the answer." *Id.*; Sunstein, 94 Va. L. Rev. at 1429 ("After *American Trucking*, it is plain that a narrowing construction by the agency will not save an otherwise unacceptable delegation.").

---

[11] As Professor Sunstein has observed: "it is not difficult to distinguish OSHA from statutes that the Court has upheld" against nondelegation challenges. Sunstein, 94 Va. L. Rev. at 1448. *Cf. Jarkesy,* 34 F.4th at 462 (finding nondelegation violation).

As the Supreme Court has recently explained: "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts. This principle applies not only to adding terms not found in the statute, but also to imposing limits on an agency's discretion that are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (cleaned up).

Perhaps recognizing the unfettered legislative power Congress unconstitutionally granted it to make major policy choices affecting the entire private economy, OSHA has sought to tie its own hands. *See, e.g.*, 54 Fed. Reg. 36,644, 36,652–53 (Sept. 1, 1989) (purporting to adopt *Benzene* plurality's judicially created "significant risk" requirement); *id.* at 36,656 (purporting to adopt *Cotton Dust* dicta based on legislative history that permanent standard must be "technologically and economically feasible"); 58 Fed. Reg. 16,612, 16,615 (Mar. 30, 1993) (changing position to self-impose constraints to avoid nondelegation issue).

But OSHA's prior efforts to putatively disavow the unfettered discretion Congress granted it to regulate the entire private economy are unavailing. *See Whitman*, 531 U.S. at 472. *But see Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 938 F.2d 1310 (remanding regulation to OSHA on the view that nondelegation problems with OSH Act could be cured by agency narrowing construction); *Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am.,*

18

*UAW*, 37 F.3d at 667–70 (finding OSHA's purported narrowing construction of OSH Act cured nondelegation problems). "If OSHA is to be rescued from constitutional objection, it must be because of what the statute says, not because of agency policymaking in the absence of legislative guidance." Sunstein, 94 Va. L. Rev. at 1429.

### C. Constitutional Avoidance Cannot Save the Statute.

Nor can constitutional avoidance rescue Congress's constitutionally flawed handiwork. "Constitutional avoidance is not a license to rewrite Congress's work to say whatever the Constitution needs it to say in a given situation." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2207 (2020). "Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems. But a court relying on that canon still must *interpret* the statute, not rewrite it." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). Put different, "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases. Instead, the canon permits a court to choose between competing *plausible* interpretations of a statutory text." *Id.* at 843 (cleaned up). And "[n]o matter how severe the constitutional doubt, courts may choose only between reasonably available interpretations of a text." *Whitman*, 531 U.S. at 471.

Nor is the major questions doctrine a viable option for cabining OSHA's sweeping permanent safety standard power on a case-by-case basis. 29 U.S.C. § 655(b) is a core provision of the OSH Act, which is central to OSHA's congressionally assigned mission of "ensuring occupational safety." *See NFIB v. OSHA*, 142 S. Ct. at 663 (emphasis deleted). *See generally West Virginia v. EPA*, 142 S. Ct. at 2622–23 (Gorsuch, J., concurring) (discussing factors for clear statement inquiry). Section 6(b) of the OSH Act, as applied to permanent safety standards, is not an "unintentional, oblique, or otherwise unlikely delegation[] of the legislative power," *see NFIB v. OSHA*, 142 S. Ct. at 669 (Gorsuch, J., concurring), but rather a clear statement of Congress's intent to grant OSHA power to make major policy decisions. After all, punting these legislative decisions to OSHA was the whole point of the statutory language. *See* Sunstein, 94 Va. L. Rev. at 1407, 1431.

## IV.    Objections to Enforcement of the Separation of Powers Lack Merit.

Finally, this Court should reject any handwaving and parade-of-horribles arguments against meaningfully enforcing the separation of powers. The sky will not fall if this Court enforces the Constitution's bar against delegation of legislative power. As Judge Thapar suggested, the strawman arguments commonly advanced by proponents of the administrative state lack merit:

> [O]ne common critique stands in the way: Congress simply isn't up to the job. According to some, Congress is incapable of acting quickly in response to emergencies. Others say modern society is too complex to be run by legislators—better to leave it to the agency bureaucrats. In

light of the original meaning, history, and structure of our Constitution, these arguments should not carry any weight. But even on their own terms, neither argument washes.

*Tiger Lily*, 5 F.4th at 674 (Thapar, J., concurring).

As to the first objection, Judge Thapar counters: "The government's response to the coronavirus pandemic proves otherwise. Congress acted swiftly to pass broad relief for the general public. But it also switched out the hammer for the scalpel when necessary." *Id.* As to the second: "The contention that Congress lacks the expertise to legislate on complicated topics appears similarly attractive at first glance. But the executive branch need not have a monopoly on experts. . . . [Congress] has experts of its own." *Id.* at 675. *See* Jesse M. Cross & Abbe R. Gluck, *The Congressional Bureaucracy*, 168 U. Pa. L. Rev. 1541, 1544 (2020). Neither objection should stand in the way of enforcing the separation of powers required by the Constitution.

One might ask, what difference does it make? The answer: "Executive-branch experts make regulations; congressional experts make recommendations. Congressional bureaucracy leaves the law-making power with the people's representatives—right where the Founders put it." *Tiger Lily*, 5 F.4th at 675 (Thapar, J., concurring). After all, "[o]ne can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts." *Free Enter. Fund.*, 561 U.S. at 499.

## CONCLUSION

For these reasons, this Court should reverse the district court's judgment.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
1310 N. Courthouse Road, Ste. 700
Arlington, VA 22201
571.329.4529
mpepson@afphq.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of FRAP 29(a)(5) and FRAP 32(a)(7)(B) because it contains 5,348 words. This brief also complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.


/s/ Michael Pepson
Michael Pepson

Dated: November 14, 2022

23

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Appellant Allstates Refractory Contractors, LLC and Reversal with the Clerk of the Court by using the appellate CM/ECF system. I further certify that service will be accomplished by the appellate CM/ECF system.

/s/ Michael Pepson
Michael Pepson

Dated: November 14, 2022