No. 22-3772

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

ALLSTATES REFRACTORY CONTRACTORS, LLC,

Plaintiff-Appellant,

v.

MARTIN J. WALSH, et al.,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Northern District of Ohio

_____

## BRIEF FOR APPELLEES

_____

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

EDMUND C. BAIRD
*Associate Solicitor for*
*Occupational Safety and Health*

LOUISE M. BETTS
*Counsel for Appellate Litigation*

JIN Y. CHONG
BRIAN A. BROECKER
*Senior Attorneys*
*U.S. Department of Labor*
*200 Constitution Ave., NW*
*Washington, DC 20210*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

MICHELLE M. BAEPPLER
*First Assistant United States Attorney*

ALISA B. KLEIN
COURTNEY L. DIXON
*Attorneys, Appellate Staff*
*Civil Division, Room 7243*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*(202) 353-8189*

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ........................................................ 1

STATEMENT OF JURISDICTION .......................................................................... 2

STATEMENT OF THE ISSUE ............................................................................... 2

STATEMENT OF THE CASE ............................................................................... 2

    A.    Statutory Background ............................................................................ 2

    B.    Factual Background and Proceedings Below ............................................ 6

SUMMARY OF ARGUMENT ............................................................................... 8

STANDARD OF REVIEW ................................................................................... 9

ARGUMENT:

    PLAINTIFF'S NONDELEGATION CLAIM IS MERITLESS ..................... 10

    A.    The Occupational Safety and Health Act Constrains
        the Secretary's Authority in Significant Ways Recognized
        by the Supreme Court ....................................................................... 10

    B.    Plaintiff's Arguments Disregard the Supreme Court's
        Interpretations of the Act and the Court's Nondelegation
        Precedents ..................................................................................... 15

CONCLUSION .............................................................................................. 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ................................................................. 11, 21

*AFL-CIO v. OSHA*,
  965 F.2d 962 (11th Cir. 1992) .................................................... 16

*Alabama Power Co. v. OSHA*,
  89 F.3d 740 (11th Cir. 1996) ...................................................... 16

*American Power & Light Co. v. SEC*,
  329 U.S. 90 (1946) ........................................................... 10, 11, 12

*American Textile Mfrs. Inst., Inc. v. Donovan*,
  452 U.S. 490 (1981) ................................................. 3-4, 4, 9, 13, 16, 17

*ASARCO, Inc. v. OSHA*,
  746 F.2d 483 (9th Cir. 1984) ...................................................... 16

*Big Time Vapes, Inc. v. FDA*:
  963 F.3d 436 (5th Cir. 2020), *cert. denied,*
    141 S. Ct. 2746 (2021) ................................................ 8, 10, 20, 22
  141 S. Ct. 2746 (2021) .............................................................. 22

*Blocksom & Co. v. Marshall*,
  582 F.2d 1122 (7th Cir. 1978) .............................................. 8, 9, 15

*Forging Indus. Ass'n v. Secretary of Labor*,
  773 F.2d 1436 (4th Cir. 1985) .................................................... 16

*Industrial Union Dep't, AFL-CIO v. American Petroleum Inst.*,
  448 U.S. 607 (1980) ................................... 3, 7, 9, 12, 13, 16, 18

*International Union, UAW v. OSHA*,
  37 F.3d 665 (D.C. Cir. 1994) ...................................................... 14

*J.W. Hampton, Jr., & Co. v. United States*,
  276 U.S. 394 (1928) ............................................................ 8, 10

*Jennings v. Rodriguez,*
  138 S. Ct. 830 (2018) ................................................................................18

*Kiewit Power Constructors Co. v. Secretary of Labor,*
  959 F.3d 381 (D.C. Cir. 2020) ............................................................ 2, 3

*MCP No. 165, In re,*
  21 F.4th 357 (6th Cir. 2021), *stay application granted by*
  *NFIB*, 142 S. Ct. 661 (2022)....................................................................16

*Mistretta v. United States,*
  488 U.S. 361 (1989) ..............................................8, 10, 11, 12, 20, 22

*National Broad. Co. v. United States,*
  319 U.S. 190 (1943) ................................................................................11

*National Fed'n of Indep. Bus. v. Department of Labor,*
  142 S. Ct. 661 (2022) ........................................ 3, 4, 7, 9, 13, 14, 19, 23

*National Grain & Feed Ass'n v. OSHA,*
  866 F.2d 717 (5th Cir. 1988) ............................................................ 16, 17

*National Mar. Safety Ass'n v. OSHA,*
  649 F.3d 743 (D.C. Cir. 2011), *cert. denied,*
  566 U.S. 936 (2012) ..............................................8, 9, 13, 15, 16, 17

*Panama Refining Co. v. Ryan,*
  293 U.S. 388 (1935) ......................................................................... 11, 21

*Public Citizen Research Grp. v. U.S. Dep't of Labor,*
  557 F.3d 165 (3d Cir. 2009) ..................................................................16

*United States v. Field,*
  53 F.4th 1027 (6th Cir. 2022)................................................................19

*United States v. Grimaud,*
  220 U.S. 506 (1911) ................................................................................10

*Watson v. Cartee,*
  817 F.3d 299 (6th Cir. 2016) ..................................................................9

*Wayman v. Southard*,
   23 U.S. (10 Wheat.) 1 (1825) ................................................................................10

*Whitman v. American Trucking Ass'ns*,
   531 U.S. 457 (2001) ............................................................... 11, 12, 20, 21

*Yakus v. United States*,
   321 U.S. 414 (1944) ....................................................................... 11, 21

**Statutes:**

Occupational Safety and Health Act of 1970,
   Pub. L. No. 91-596, 84 Stat. 1590
   (codified as amended at 29 U.S.C. § 651 *et seq.*) ................................................2
      29 U.S.C. § 651 ....................................................................................7
      29 U.S.C. § 651(b) ......................................................................... 3, 12, 14
      29 U.S.C. § 652(8) ............................................................................ 3, 8, 12
      29 U.S.C. § 654(a)(1) ........................................................................14
      29 U.S.C. § 655(a) ......................................................................... 14, 23
      29 U.S.C. § 655(b) .................................................................. 3, 4, 6, 9, 13
      29 U.S.C. § 655(b)(7) .........................................................................5
      29 U.S.C. § 655(b)(8) ...................................................................4, 7, 14, 18

28 U.S.C. § 1291 ........................................................................................2

28 U.S.C. § 1331 ........................................................................................2

**Regulation:**

29 C.F.R. § 1926.759(b) ................................................................................6

**Legislative Material:**

S. Rep. No 91-1282 (1970) ..........................................................................2

**Other Authorities:**

Jeff Brown, U.S. Bureau of Labor Statistics, *Nearly 50 Years of
  Occupational Safety and Health Data*, Beyond the Numbers,
  July 2020, https://perma.cc/ZQ98-2WGT ..................................................... 5

45 Fed. Reg. 60,656 (Sept. 12, 1980)
  (codified at 20 C.F.R. pt. 1910, subpt. L) ......................................... 6, 23

53 Fed. Reg. 22,612 (June 16, 1988)
  (codified at 29 C.F.R. pt. 1926, subpt. Q) ............................................ 6

59 Fed. Reg. 16,334 (Apr. 6, 1994)
  (codified at 29 C.F.R. §§ 1910.132, .133, .135, .136, .138) ..................... 5

59 Fed. Reg. 51,672 (Oct. 12, 1994)
  (codified at 29 C.F.R. § 1910.266) ..................................................... 6

79 Fed. Reg. 20,316 (Apr. 11, 2014)
  (codified at 29 C.F.R. §§ 1910.137, 1926.97) ....................................... 5

80 Fed. Reg. 25,366 (May 4, 2015)
  (codified at 29 C.F.R. pt. 1926, subpt. AA) .......................................... 6

81 Fed. Reg. 82,494 (Nov. 18, 2016)
  (codified at 29 C.F.R. § 1910.140) ..................................................... 6

OSHA, U.S. Dep't of Labor, *Commonly Used Statistics*,
  https://perma.cc/G55U-NH7G (last visited Jan. 23, 2023) ........................ 5

Cass R. Sunstein, *Is OSHA Unconstitutional?*,
  94 Va. L. Rev. 1407 (2008) ............................................... 15, 17, 19

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff contends that the Occupational Safety and Health Act of 1970 fails to provide an intelligible principle to guide the Secretary of Labor's exercise of authority to issue workplace safety standards.  In rejecting that claim, the district court correctly applied settled legal principles.  The government does not believe that oral argument is necessary but stands ready to present oral argument if the Court determines that it would facilitate consideration of the issues.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331.

Compl., R. 1, PageID#4.  The district court granted summary judgment for

defendants on September 2, 2022.  Op., R. 30, PageID#377.  Plaintiff timely

appealed.  Notice of Appeal, R. 32, PageID#379.  This Court has jurisdiction under

28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Plaintiff contends that the provision of the Occupational Safety and Health Act

of 1970 (Act) that authorizes the Secretary of Labor to issue permanent workplace

safety standards is an unconstitutional delegation of lawmaking power to the

Secretary.  The question presented is whether this claim is meritless because the Act,

as interpreted by the Supreme Court, meaningfully constrains the Secretary's

authority.

## STATEMENT OF THE CASE

### A.     Statutory Background

**1.**  Congress enacted the Occupational Safety and Health Act in 1970.  Pub. L.

No. 91-596, 84 Stat. 1590 (codified as amended at 29 U.S.C. § 651 *et seq.*).  Before the

Act's enactment, "workplace safety was addressed in a patchwork manner by federal

and state regulations and, to a degree, employers' voluntary efforts."  *Kiewit Power*

*Constructors Co. v. Secretary of Labor*, 959 F.3d 381, 385 (D.C. Cir. 2020) (citing S. Rep.

No. 91-1282, at 3-4 (1970)).  But those "measures were largely ineffective," and "[i]n

the four years preceding the Act's adoption, more Americans were killed at work than in the Vietnam War and the increasing human and economic cost of industrial hazards became a matter of serious national concern." *Id.*

"The Act created the Occupational Safety and Health Administration (OSHA), which is part of the Department of Labor and under the supervision of its Secretary." *National Fed. of Indep. Bus. v. Department of Labor* (NFIB), 142 S. Ct. 661, 663 (2022). "As its name suggests," Congress tasked OSHA "with ensuring *occupational* safety," *id.*, that is, assuring "safe and healthful working conditions" "so far as possible," 29 U.S.C. § 651(b).  To that end, Congress authorized the Secretary to promulgate workplace safety and health standards, *id.* § 655(b), that must be "reasonably necessary or appropriate to provide safe or healthful employment," *id.* § 652(8).  These standards must "be developed using a rigorous process that includes notice, comment, and an opportunity for a public hearing." *NFIB*, 142 S. Ct. at 663 (citing 29 U.S.C. § 655(b)).

The Supreme Court has repeatedly recognized that the text, structure, and context of the Act constrain the Secretary's discretion to issue workplace safety standards.  The Supreme Court has long interpreted the Act to require that, before promulgating any workplace health or safety standard, the Secretary must "make a threshold finding that . . . significant risks are present and can be eliminated or lessened by a change in practices." *Industrial Union Dep't, AFL-CIO v. American Petroleum Inst.* (*Benzene*), 448 U.S. 607, 642 (1980) (plurality op.); *see American Textile*

3

*Mfrs. Inst., Inc. v. Donovan* (*Cotton Dust*), 452 U.S. 490, 505-06 & n.25, 513 n.32 (1981) (adopting this significant-risk requirement in an opinion of the Court). In addition, the Supreme Court has interpreted the statutory phrase "reasonably necessary or appropriate" in § 652(8) as limiting the Secretary to promulgating only safety standards that are "economically" and "technologically feasible." *Cotton Dust*, 452 U.S. at 513 n.31 (reasoning that "any standard that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act"). Furthermore, in a recent decision, the Supreme Court emphasized that "[t]he Act empowers the Secretary to set *workplace* safety standards, not broad public health measures." *NFIB*, 142 S. Ct. at 665 (citing, *e.g.*, 29 U.S.C. § 655(b)). Thus, although the Act allows the Secretary to regulate "'occupational' hazards and the safety and health of 'employees,'" the Court concluded that the Act does not authorize the Secretary to promulgate a broad-sweeping COVID-19 "vaccine mandate." *Id.*

The Act also provides other directions and requirements for the Secretary's promulgation of workplace health and safety standards. The Act specifies, for example, that for the Secretary to promulgate a permanent health or safety standard that "differs substantially from an existing" voluntary consensus standard, the Secretary must state the "reasons" for why the adopted rule would "better effectuate the purposes of" the Act. 29 U.S.C. § 655(b)(8). And the Act provides that "[a]ny standard promulgated . . . shall prescribe the use of labels or other appropriate forms

of warning as are necessary to insure that employees are apprised of all hazards to which they are exposed," and "[w]here appropriate, . . . prescribe suitable protective equipment and control or technological procedures to be used in connection with such hazards." *Id.* § 655(b)(7).

**2.** The incidence rates of nonfatal occupational injuries and illnesses have fallen significantly since the enactment of the Occupational Safety and Health Act— from 10.9 cases per 100 full-time-equivalent workers in 1972 to 2.8 cases per 100 full-time-equivalent workers in 2018. *See* Jeff Brown, U.S. Bureau of Labor Statistics, *Nearly 50 Years of Occupational Safety and Health Data*, July 2020, at chart 1, https://perma.cc/ZQ98-2WGT. Workplace fatalities have also decreased substantially, "from about 38 worker deaths a day in 1970 to 13 a day in 2020." *See* OSHA, U.S. Dep't of Labor, *Commonly Used Statistics*, https://perma.cc/G55U-NH7G (last visited Jan. 23, 2023).

Among the permanent safety standards that OSHA has promulgated pursuant to § 655(b) are standards requiring the use of personal protective equipment (such as eye, face, foot, and hand protection) to protect workers from myriad hazards, including being injured or killed when struck by foreign objects, 59 Fed. Reg. 16,334 (Apr. 6, 1994) (codified at 29 C.F.R. §§ 1910.132, .133, .135, .136, .138); requiring electrical protective equipment to protect employees from electric shock, 79 Fed. Reg. 20,316 (Apr. 11, 2014) (codified at 29 C.F.R. §§ 1910.137, 1926.97); requiring protections for employees working in confined spaces in construction to prevent

harms such as asphyxiation and chemical burns, *see* 80 Fed. Reg. 25,366 (May 4, 2015) (codified at 29 C.F.R. pt. 1926, subpt. AA); and requiring fire and fall protection systems, 45 Fed. Reg. 60,656 (Sept. 12, 1980) (codified at 20 C.F.R. pt. 1910, subpt. L) (fire protection); 81 Fed. Reg. 82,494 (Nov. 18, 2016) (codified at 29 C.F.R. § 1910.140) (fall protection).  Many standards promulgated under § 655(b) establish safety requirements to prevent injuries and deaths during particularly hazardous work, such as logging operations, 59 Fed. Reg. 51,672 (Oct. 12, 1994) (codified at 29 C.F.R. § 1910.266); and concrete and masonry construction, 53 Fed. Reg. 22,612 (June 16, 1988) (codified at 29 C.F.R. pt. 1926, subpt. Q).

### B.    Factual Background and Proceedings Below

Plaintiff Allstates Refractory Contractors, LLC, is "a full-service industrial process general contractor serving the glass, metal, and petrochemical industries." Compl., R. 1, PageID#18.  Plaintiff has been cited for violations of OSHA standards, including a serious violation in 2019 for "violating standards governing falling-object protection," 29 C.F.R. § 1926.759(b), following an incident in which a "catwalk brace fell and injured a worker below," Boothe Decl., R. 23-2, PageID#263; *id.* PageID#270 (citation and notification of penalty).  Plaintiff did not contest that citation; instead, plaintiff settled the violation with the agency in December 2019.  *Id.*, PageID#277.

Two years later, plaintiff filed this suit in district court, alleging that all permanent workplace safety standards promulgated under 29 U.S.C. § 655(b) should

6

be declared invalid on the theory that Congress impermissibly delegated legislative power to the Secretary.  *See* Compl., R. 1, PageID#7, 31.  The district court granted summary judgment in favor of the government.  The district court recognized that Congress must impose "specific restrictions that meaningfully constrain the agency," Op., R. 30, PageID#377 (quoting *NFIB*, 142 S. Ct. at 669 (Gorsuch, J., concurring)), and concluded that Congress had done so.[1]

The district court explained that the Supreme Court has interpreted the Act to require the Secretary, before setting any safety standard, to find "that a place of employment is unsafe—in the sense that significant risks are present."  Op., R. 30, PageID#374 (quoting *Benzene*, 448 U.S. at 642).  The district court further explained that the Secretary's exercise of discretion is guided by the Act's explicit purpose of assuring "safe and healthful working conditions," 29 U.S.C. § 651, and by the Act's requirement that the Secretary may not promulgate a workplace safety standard that "differs substantially from an existing national consensus standard" unless the Secretary can explain why the chosen standard would "better effectuate" the statute's purposes, 29 U.S.C. § 655(b)(8); *see* Op., R. 30, PageID#376.

In holding that the Act provides an intelligible principle to guide the Secretary's exercise of authority, Op., R. 30, PageID#376-77, the district court followed decisions of the D.C. Circuit and Seventh Circuit, which likewise rejected nondelegation

---

[1] The district court also concluded that the Act's special-review provisions do not preclude this suit.  Op., R. 30, PageID#371.  We do not challenge that ruling.

challenges to the Secretary's authority to promulgate permanent workplace safety standards. *Id.*, PageID#374-75 (first citing *National Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 755-56 (D.C. Cir. 2011), *cert. denied*, 566 U.S. 936 (2012); and then citing *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1126 (7th Cir. 1978)). The district court "decline[d]" plaintiff's "invitation" to "disregard" the Supreme Court's precedents. *Id.*, PageID#376.

## SUMMARY OF ARGUMENT

The district court appropriately rejected plaintiff's nondelegation claim, which ignores the significant limitations the Act places on the Secretary and the governing test established by the Supreme Court's nondelegation cases. Delegations are constitutional so long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (second alteration in original) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)). This standard is "not demanding," and it is readily satisfied by Congress's delegation to the Secretary here. *See Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020) (quotation marks omitted), *cert. denied*, 141 S. Ct. 2746 (2021).

Congress authorized the Secretary to promulgate workplace safety standards that are "reasonably necessary or appropriate to provide safe . . . employment and places of employment." 29 U.S.C. § 652(8). The Supreme Court has repeatedly interpreted this delegation as meaningfully cabining the Secretary's authority. The

Court has recognized that the Act requires the Secretary, before promulgating any workplace standard, to make a threshold finding that significant risks are present that can be eliminated or reduced by a change in practices. *See Benzene*, 448 U.S. 607, 639-40 (1980) (plurality op.); *see also Cotton Dust*, 452 U.S. 490, 513 n.32 (1981). The Court has also recognized that "reasonably necessary or appropriate" safety standards must be "economically" and "technologically feasible" for industry. *Cotton Dust*, 452 U.S. at 513 n.31. Most recently, the Court emphasized that "[t]he Act empowers the Secretary to set *workplace* safety standards, not broad public health measures." *NFIB*, 142 S. Ct. 661, 665 (2022) (per curiam) (citing, *e.g.*, 29 U.S.C. § 655(b)).

These and other limitations in the Act place the Secretary's authority to promulgate workplace safety standards well within the range of delegations approved by the Supreme Court. Thus, the two other courts of appeals to consider the issue both rejected nondelegation challenges to the Secretary's authority. *National Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 755-56 (D.C. Cir. 2011), *cert. denied*, 566 U.S. 936 (2012); *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1125-26 (7th Cir. 1978). The district court correctly applied the Supreme Court's precedents and reached the same conclusion as the D.C. and Seventh Circuits.

## STANDARD OF REVIEW

This Court reviews de novo the district court's summary-judgment decision. *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016).

# ARGUMENT

# PLAINTIFF'S NONDELEGATION CLAIM IS MERITLESS

### A. The Occupational Safety and Health Act Constrains the Secretary's Authority in Significant Ways Recognized by the Supreme Court

**1.** Since the Founding era, the Supreme Court has held that "Congress may certainly delegate to others[] powers which the legislature may rightfully exercise itself." *Wayman v. Southard*, 23 U.S. (10 Wheat) 1, 43 (1825) (Marshall, C.J.). Delegations are constitutional so long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (second alteration in original) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)). It is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Id.* at 372-73 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

As Judge Smith recently observed, "[t]hose standards . . . are not demanding." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020) (second alteration in original) (quotation marks omitted), *cert. denied*, 141 S. Ct. 2746 (2021). Even though Congress has delegated authority from "the beginning of the government," *id.* (quoting *United States v. Grimaud*, 220 U.S. 506, 517 (1911)), the Supreme Court "has found only two delegations to be unconstitutional," *id.* at 446. One "provided literally

no guidance for the exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)).

By contrast, in the almost ninety years since those decisions issued, the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta*, 488 U.S. at 373, and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *American Trucking*, 531 U.S. at 474-75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)).  The Supreme Court has upheld, for example, statutes directing the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes, *Mistretta*, 488 U.S. at 374-77; authorizing the Price Administrator to fix "fair and equitable" commodities prices, *Yakus v. United States*, 321 U.S. 414, 420 (1944) (quotation marks omitted)); authorizing the Federal Communications Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *National Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943) (quotation marks omitted); authorizing the Securities and Exchange Commission to ensure that a holding company's structure does not "unfairly or inequitably distribute voting power among security holders," *American Power & Light*, 329 U.S. at 104-05 (quotation marks omitted); and directing

11

the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required to "protect the public health," *American Trucking*, 531 U.S. at 472 (quotation marks omitted).

**2.** The authority that the Occupational Safety and Health Act delegates to the Secretary of Labor to establish workplace safety standards, as interpreted by the Supreme Court, readily meets the requirements established by the Supreme Court's nondelegation cases.

"Congress clearly delineate[d] the general policy" that it intended the Secretary to pursue in implementing the Act. *Mistretta*, 488 U.S. at 372-73 (quoting *American Power & Light*, 329 U.S. at 105). Congress specified that the Act's purpose is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b).

Congress also "clearly delineate[d] . . . the boundaries of" the Secretary's authority to promulgate permanent workplace safety standards. *Mistretta*, 488 U.S. at 372-73 (quoting *American Power & Light*, 329 U.S. at 105). The Supreme Court has repeatedly recognized that the Act cabins the Secretary's authority in meaningful ways. First, in the *Benzene* decision, a plurality of the Court considered the Secretary's authority to promulgate standards that are "reasonably necessary or appropriate to provide safe . . . employment and places of employment," 29 U.S.C. § 652(8), and recognized that the statutory term "safe" in this context does not mean "risk-free." *Benzene*, 448 U.S. 607, 642 (1980) (plurality op.). The Court thus interpreted the Act

12

as requiring the Secretary "to make a threshold finding . . . that significant risks are present and can be eliminated or lessened by a change in practices" before issuing any permanent health or safety standard. *Id.* The following year, in the *Cotton Dust* decision, the Supreme Court adopted that significant risk requirement in an opinion for the Court. *See Cotton Dust*, 452 U.S. 490, 505-06 & n.25, 513 n.32 (1981); *see also, e.g.*, *National Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 750 n.8 (D.C. Cir. 2011) (explaining that "[a]lthough *Benzene* commanded only a plurality of the Court . . . a majority of the Court has adopted the significant risk requirement"), *cert. denied*, 566 U.S. 936 (2012).

Second, the Supreme Court further concluded that the statutory phrase "reasonably necessary or appropriate" in § 652(8) limits the Secretary to promulgating only safety standards that are "economically" and "technologically feasible." *Cotton Dust*, 452 U.S. at 513 n.31 (quotation marks omitted). The Supreme Court reasoned that "any standard that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act." *Id.*

Third, the Supreme Court recently emphasized that "[t]he Act empowers the Secretary to set *workplace* safety standards, not broad public health measures." *NFIB*, 142 S. Ct. 661, 665 (2022) (per curiam) (citing, *e.g.*, 29 U.S.C. § 655(b)). Thus, although the Act allows the Secretary to regulate "'occupational' hazards and the safety and health of employees,'" the Court concluded that the Act did not authorize the Secretary to promulgate a broad-sweeping COVID-19 "vaccine mandate" that

13

operated as "a general public health measure." *Id.* at 665-66. The Court reasoned that permitting OSHA to do so "would significantly expand OSHA's regulatory authority without clear congressional authorization." *Id.* at 665

At the same time, the language, structure, and purpose of the Act make clear that the workplace safety standards issued by the Secretary must "provide a high degree of employee protection." *International Union, UAW v. OSHA*, 37 F.3d 665, 669 (D.C. Cir. 1994) (quotation marks omitted). As discussed above, the explicit purpose of the Act is to "assure so far as possible . . . safe . . . working conditions." 29 U.S.C. § 651(b); *see also id.* § 654(a)(1) (requiring employers to provide a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm"). To that end, Congress specifically directed the Secretary during the first two years of the statute's enactment to begin by promulgating safety standards that are "national consensus standard[s]" and "established Federal standard[s]," and specified that in the event there was more than one such standard, the Secretary was to choose "the standard which assures the greatest protection." *Id.* § 655(a). Congress further specified that the Secretary should not thereafter promulgate a standard that "differs substantially from an existing national consensus standard" unless the Secretary explains "why the rule . . . will better effectuate the purposes" of the Act, *id.* § 655(b)(8)—that is, unless the Secretary explains why the chosen standard will better "assure" safe working conditions "so far as possible," *id.* § 651(b).

In light of these statutory provisions, the two other courts of appeals to consider the issue both rejected nondelegation challenges to the Secretary's authority to promulgate permanent workplace safety standards. Writing for the D.C. Circuit, Judge Henderson explained that the Secretary's authority to promulgate "safety standards that are 'reasonably necessary or appropriate to provide safe'" places of employment "is no broader than other delegations that" the Supreme Court has upheld—such as delegations to "act in the 'public interest,'" "or in a manner 'requisite to protect the public health,'" "or when 'necessary to avoid an imminent hazard to the public safety.'" *National Mar. Safety Ass'n*, 649 F.3d at 755-56, *cert. denied*, 566 U.S. 936. The Seventh Circuit likewise found it "perfectly clear" that Congress "chose[] a policy and announced general standards" to guide the Secretary's discretion. *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1126 (7th Cir. 1978).

## B. Plaintiff's Arguments Disregard the Supreme Court's Interpretations of the Act and the Court's Nondelegation Precedents

The district court correctly followed the decisions of the D.C. Circuit and Seventh Circuit. Plaintiff's assertion that "[t]he Act does not constrain the OSHA's discretion," Br. 46 (bold omitted), simply ignores the Supreme Court's interpretations of the statute. As interpreted by the Supreme Court, the Act provides "both floors and ceilings on agency action." *See* Cass R. Sunstein, *Is OSHA Unconstitutional?*, 94 Va. L. Rev. 1407, 1435 (2008). In arguing to the contrary, plaintiff invites this Court to

15

disregard the Supreme Court's constructions of the Act as well as the Court's nondelegation precedents—which a lower court may not properly do.

**1.**  Plaintiff insists that "the Act itself does not remotely require a finding of 'significant risk,'" Br. 46, and dismisses—as "dicta"—the Supreme Court's conclusion that any permanent workplace standard must be "technologically and economically feasible," Br. 42.

As discussed above, however, a plurality of the Supreme Court in *Benzene* interpreted the Act's text as including the requirement of significant risk, and the Court adopted that requirement the following year in *Cotton Dust*.  *See Benzene*, 448 U.S. at 607; *Cotton Dust*, 452 U.S. at 505-06 & n.25, 513 n.32.  Every court of appeals to address the issue has agreed that the Supreme Court "adopted the significant risk requirement."  *See National Mar. Safety Ass'n*, 649 F.3d at 750 n.8; *see also*, *e.g.*, *Public Citizen Research Grp. v. U.S. Dep't of Labor*, 557 F.3d 165, 170, 176 (3d Cir. 2009); *Alabama Power Co. v. OSHA*, 89 F.3d 740, 745 (11th Cir. 1996); *AFL-CIO v. OSHA*, 965 F.2d 962, 972-73, 975 (11th Cir. 1992); *National Grain & Feed Ass'n v. OSHA*, 866 F.2d 717, 727, 737 (5th Cir. 1988); *Forging Indus. Ass'n v. Secretary of Labor*, 773 F.2d 1436, 1444 (4th Cir. 1985) (en banc); *ASARCO, Inc. v. OSHA*, 746 F.2d 483, 490 (9th Cir. 1984).  Accordingly, this Court recognized when it reviewed the Secretary's COVID-19 vaccine mandate that the Secretary "must show" "significant risk" "to promulgate a permanent standard under § 655(b) of the Act."  *In re MCP No. 105*, 21 F.4th 357, 376 (6th Cir. 2021), *stay application granted by NFIB*, 142 S. Ct. 661 (2022).

16

The Supreme Court's *Cotton Dust* decision likewise makes clear that economic and technological feasibility, no less than significant risk, are statutory limitations on the agency's authority.  The Supreme Court specifically explained that "any standard that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act."  *Cotton Dust*, 452 U.S. at 513 n.31.  Courts of appeals have long recognized and enforced those limitations.  *See, e.g.*, *National Mar. Safety Ass'n*, 649 F.3d at 752-53 (vacating and remanding safety standard for lack of substantial evidence demonstrating feasibility); *National Grain & Feed Ass'n*, 866 F.2d at 738 (remanding to agency "for reconsideration of the economic feasibility of" safety standard).

Plaintiff is likewise wrong to insist that the Act leaves the Secretary free to "do nothing at all" in the face of a significant risk.  Br. 49.  That interpretation would be flatly at odds with the statute's text and purpose—as explained in the law review article on which plaintiff's brief heavily relies.  *See* Sunstein, 94 Va. L. Rev. at 1435 (explaining that "the agency is not permitted to ignore a significant risk" because a failure to regulate under such circumstances would be a failure "to do what is 'reasonably necessary or appropriate'" to provide safe places of employment); *see also supra* p. 14.

Plaintiff is also incorrect to dismiss as merely "*procedural*" (Br. 52) the Act's limitation that the Secretary may promulgate a permanent safety standard that "differs substantially from an existing national consensus standard" only if the Secretary

17

explains why the new standard will "better effectuate" the purposes of the Act. 29 U.S.C. § 655(b)(8). That provision is not "a meaningless formality." *Benzene*, 448 U.S. at 644 (plurality op.). To the contrary, it "impose[s] upon the Secretary the duty" to consider existing voluntary consensus standards and to determine that those existing standards are not "adequate to protect workers from a continuing and significant risk of harm" before promulgating a substantially different mandatory standard. *Id.* Thus, when the agency regulates in an area that is addressed by national consensus standards, those standards necessarily serve as an important baseline.

**2.** Plaintiff disregards not only the Supreme Court's interpretations of the Act but also the canon of constitutional avoidance. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). In the *Benzene* decision, in interpreting the Act's text as requiring a threshold finding of significant risk, the plurality emphasized that that construction was "certainly . . . favored" over an interpretation of the Act that would provide OSHA an "open-ended grant" of authority that "might" otherwise present nondelegation concerns. *See Benzene*, 448 U.S. at 646 (plurality op.). Similarly, in his concurring opinion in *NFIB*, Justice Gorsuch (joined by Justices Thomas and Alito) concluded that the interpretation of the Act that the Court adopted there under the rubric of the "major questions doctrine" avoided what the concurrence perceived as a nondelegation issue. Justice Gorsuch reasoned that, "[w]hichever the doctrine, the point is the same": the Supreme Court rejected an interpretation of the Act that, in his view, would have imposed "no 'specific restrictions' that 'meaningfully constrai[n]'

18

the agency."  *NFIB*, 142 S. Ct. at 669 (Gorsuch, J., concurring) (second alteration in

original); *see also id.* at 668 (citing *Benzene* as another example of the Court invoking the

major questions doctrine to avoid a potential nondelegation problem).

Plaintiff turns that approach on its head.  Plaintiff invites this Court to

disregard the Supreme Court's constructions of the Act and to interpret the statute as

placing no constraints on the Secretary's authority, and then to declare the Act

unconstitutional on that ground.  It is, however, the Judiciary's duty to uphold an Act

of Congress whenever a constitutional interpretation is available.  *See United States v.*

*Field*, 53 F.4th 1027, 1042 (6th Cir. 2022); *see also* Sunstein, 94 Va. L. Rev. at 1446

(explaining that "a court that properly uses the Avoidance Canon is relying on

standard legal materials to hold that, of two or more plausible interpretations of a text,

the agency is bound by the one that gives it limited rather than open-ended

authority").

**3.**  Plaintiff also disregards the Supreme Court's nondelegation precedents.

Plaintiff insists that the Act presents a nondelegation problem because Congress

authorized the agency to make "policy decisions" and to weigh competing

considerations.  Br. 36-37.  Plaintiff makes no attempt to reconcile that account of the

nondelegation doctrine with the Supreme Court's decision in *Mistretta*, which

plaintiff's brief fails even to cite.  There, the Supreme Court was unanimous in

upholding Congress's delegation of authority to the Sentencing Commission to

promulgate then-binding Sentencing Guidelines for federal crimes, even though the

Sentencing Commission was granted "significant discretion in formulating [sentencing] guidelines," including "to determine the relative severity of federal crimes and to assess the relative weight of the offender characteristics." *Mistretta*, 488 U.S. at 377.  The Court made clear that its "cases do not at all suggest that delegations of this type may not carry with them the need to exercise judgment on matters of policy." *Id.* at 378.  Although Justice Scalia dissented on other grounds, he "fully agree[d] with the Court's rejection of" the claim that "the doctrine of unconstitutional delegation of legislative authority has been violated because of the lack of intelligible, congressionally prescribed standards to guide the Commission." *Id.* at 416 (Scalia, J., dissenting).

As discussed above, the test applied by *Mistretta* and the Supreme Court's other precedents for a valid delegation is "not demanding." *Big Time Vapes*, 963 F.3d at 442. Congress need only delineate the general policy and the boundaries of the authority that Congress delegates to the agency.  *See Mistretta*, 488 U.S. at 372-73.  "[E]ven in sweeping regulatory schemes," the Supreme Court has "never demanded," as plaintiff proposes here (*e.g.*, Br. 47-48), that Congress "provide a 'determinate criterion' for saying 'how much [of the regulated] harm is too much.'" *American Trucking*, 531 U.S. at 475; *see id.* (recognizing that agency's authority to set air-quality standards "affect[ed] the entire national economy," but emphasizing Congress was not required to specify "how 'necessary' was necessary enough" or "how 'hazardous' was too hazardous").

Plaintiff's reliance on *Panama Refining* and *Schechter Poultry*—the only two decisions in which the Supreme Court has found a nondelegation problem, both of which were decided in 1935—underscores the error of its analysis. The Supreme Court has described the provision at issue in *Panama Refining*, which permitted the President to prohibit the shipment of oil for any reason, as "provid[ing] literally no guidance for the exercise of discretion." *American Trucking*, 531 U.S. at 474. There, "Congress left the matter to the President without standard or rule, to deal with as he pleased." *Panama Refining*, 293 U.S. at 419. Similarly, in *Schechter Poultry*, the statute authorized private parties to write, and the President to approve or prescribe "codes of fair competition" in order "to rehabilitate industry," 295 U.S. at 530-31, but did not prescribe any method of attaining that goal, any limitations on the nature of the codes that could be created, or the standards against which the codes should be adjudged, *see Yakus*, 321 U.S. at 424 (describing *Schechter*). And the power to write the codes was placed not with "a public official responsible to Congress or the Executive," but rather "private individuals engaged in the industries to be regulated." *Id.*

For the reasons already explained, Congress's delegation to the Secretary cannot plausibly be compared to the boundless delegations at issue in those cases, where Congress "placed almost no limits on how the President—and in *Schechter*'s case, private groups—could wield their delegated authority." *Big Time Vapes*, 963 F.3d at 446 & n.27; *accord Mistretta*, 488 U.S. at 373 n.7 ("In *Schechter* and *Panama Refining* . . .

21

Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress had delegated power.").

The district court here properly "decline[d]" plaintiff's "invitation" to "disregard" the Supreme Court's nondelegation precedents. Op., R. 30, PageID#376-77; *see* Br. 18-27 (arguing for different nondelegation test). As Judge Smith recognized in *Big Time Vapes*, lower courts are required to apply the Supreme Court's precedent, "'not . . . read tea leaves to predict where it might end up.'" 963 F.3d at 447 (quotation marks omitted). The Fifth Circuit's restraint in that case was vindicated: the Supreme Court denied the plaintiffs' petition for a writ of certiorari, *see* 141 S. Ct. 2746 (2021), which had urged the Supreme Court to revisit the nondelegation doctrine, *see* Petition for Writ of Certiorari at *37-39, *Big Time Vapes, Inc. v. FDA*, No. 20-850, 2020 WL 7714425 (U.S. Dec. 18, 2020). This Court likewise should adhere to the doctrine that the Supreme Court has set out.

**4.** Finally, although it does not bear on the legal issue presented, plaintiff incorrectly minimizes the workplace safety standards its claim would affect. *See* Br. 61. The Secretary has promulgated numerous workplace safety standards pursuant to § 655(b) that protect employees from a range of significant workplace harms that can cause serious injury and death. *See supra* pp. 5-6. Plaintiff emphasizes (Br. 61) the Secretary's authority under 29 U.S.C. § 655(a) to promulgate mandatory safety standards based on existing "national consensus standard[s]" and "established Federal standard[s]." That provision, however, provided special rulemaking authorization to

the Secretary only for "two years" following the statute's enactment. *Id.* Since that time, the Secretary has relied on § 655(b) to update, improve, and expand on the safety standards the agency adopted under § 655(a) and to promulgate new standards as workplaces and technologies have evolved. Such permanent safety standards include, for example, the fire-safety regulations that the Supreme Court has described as a permissible exercise of the Secretary's authority. *See NFIB*, 142 S. Ct. at 665-66 (contrasting the COVID-19 vaccine mandate with a permissible workplace "fire or sanitation regulation"); 45 Fed. Reg. 60,656, 60,656-68 (Sept. 12, 1980) (promulgating fire-safety standard under § 655(b) to replace standard previously adopted under § 655(a) that had proven insufficient) (codified at 29 C.F.R. pt. 1910, subpt. L).

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

EDMUND C. BAIRD
*Associate Solicitor for
    Occupational Safety and Health*

LOUISE M. BETTS
*Counsel for Appellate Litigation*

JIN Y. CHONG
BRIAN A. BROECKER
*Senior Attorneys
U.S. Department of Labor
200 Constitution Ave., NW
Washington, DC 20210*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
    General*

MICHELLE M. BAEPPLER
*First Assistant United States Attorney*

ALISA B. KLEIN

*s/ Courtney L. Dixon*
COURTNEY L. DIXON
*Attorneys, Appellate Staff
Civil Division, Room 7243
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 353-8189
courtney.l.dixon@usdoj.gov*

January 2023

24

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,388 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


*s/ Courtney L. Dixon*
Courtney L. Dixon

# CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

*s/ Courtney L. Dixon*
Courtney L. Dixon

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government designates the

following district court documents as relevant:

| Record Entry | Description | PageID# Range |
|---|---|---|
| RE 1 | Complaint | 1-32 |
| RE23-2 | Boothe Decl. | 258-277 |
| RE30 | Memorandum Opinion | 367-377 |