No. 22-3772

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

ALLSTATES REFRACTORY CONTRACTORS, LLC,
*Plaintiff-Appellant*,

v.

MARTIN WALSH, et al.,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of Ohio (Western Division) (Zouhary, J.)
District Court Case No. 3:21-cv-1864

_____

# REPLY BRIEF OF APPELLANT
# ALLSTATES REFRACTORY CONTRACTORS, LLC

_____

Christopher M. McLaughlin
JONES DAY
North Point, 901 Lakeside Ave.
Cleveland, OH 44114
(216) 586-3939
cmmclaughlin@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St.
Dallas, TX 75201
(214) 220-3939
jbaguinaga@jonesday.com

Donald F. McGahn II
Brett A. Shumate
John M. Gore
Anthony J. Dick
Brinton Lucas
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
bshumate@jonesday.com

*Counsel for Appellant Allstates Refractory Contractors, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 3

I.  PRECEDENT SHOULD NOT BE EXTENDED TO UPHOLD THIS
UNIQUELY BROAD DELEGATION OF LEGISLATIVE POWER ................. 3

II.  THE ACT DOES NOT PROVIDE AN INTELLIGIBLE PRINCIPLE
FOR IMPOSING "APPROPRIATE" WORKPLACE-SAFETY RULES ............. 8

    A.  Language from Supreme Court Opinions Cannot
Save the Safety-Standard Delegation ...................................... 9

    B.  OSHA's Authority To Impose "Appropriate" Safety
Standards Is Discretionary, Not Mandatory ......................... 20

    C.  The Statute Does Not Require Safety Rules To
Provide a "High Degree" of Protection .................................. 24

III.  CONSTITUTIONAL AVOIDANCE CANNOT SAVE THE ACT .................... 28

CONCLUSION ..................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.L.A. Schechter Poultry Corp. v. United States,*
  295 U.S. 495 (1935)................................................................ 11

*Ala. Ass'n of Realtors v. HHS,*
  141 S. Ct. 2485 (2021) ......................................................... 11

*Am. Hosp. Ass'n v. Price,*
  867 F.3d 160 (D.C. Cir. 2017)............................................ 14

*Am. Power & Light Co. v. SEC,*
  329 U.S. 90 (1946) ............................................................. 4, 5

*Am. Textile Mfrs. Inst. v. Donovan,*
  452 U.S. 490 (1981)................................................. 14, 15, 25

*Big Time Vapes, Inc. v. FDA,*
  141 S. Ct. 2746 (2021) ........................................................... 6

*Big Time Vapes, Inc. v. FDA,*
  963 F.3d 436 (5th Cir. 2020) ................................................ 6

*Citizens United v. FEC,*
  558 U.S. 310 (2010).............................................................. 28

*Cummings v. Missouri,*
  71 U.S. (4 Wall.) 277 (1866) .............................................. 32

*Edison Elec. Inst. v. OSHA,*
  849 F.2d 611 (D.C. Cir. 1988)............................................ 32

*Free Enter. Fund v. PCAOB,*
  537 F.3d 667 (D.C. Cir. 2008)............................................... 3

*Homelite v. OSHA,*
  74 F.3d 1232 (4th Cir. 1996) ............................................. 10

*In re MCP No. 165,*
  20 F.4th 264 (6th Cir. 2021)............................................... 19

*In re MCP No. 165,*
  21 F.4th 357 (6th Cir. 2021)......................................... 15, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*,
448 U.S. 607 (1980)...................................................................... *passim*

*Int'l Union v. Chao*,
361 F.3d 249 (3d Cir. 2004) ........................................................ 22, 23

*Int'l Union v. OSHA*,
37 F.3d 665 (D.C. Cir. 1994)......................................... 13, 20, 24, 29

*Int'l Union v. OSHA*,
938 F.2d 1310 (D.C. Cir. 1991)................................................... *passim*

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ................................................................... 28, 29

*Massachusetts v. EPA*,
549 U.S. 497 (2007)........................................................................ 22

*Mistretta v. United States*,
488 U.S. 361 (1989)......................................................................... 4

*Murphy v. Smith*,
138 S. Ct. 784 (2018) ..................................................................... 21

*Nat'l Grain & Feed Ass'n v. OSHA*,
866 F.2d 717 (5th Cir. 1988) ......................................................... 15

*Nat'l Mar. Safety Ass'n v. OSHA*,
649 F.3d 743 (D.C. Cir. 2011)................................................. 13, 14, 15

*NBC v. United States*,
319 U.S. 190 (1943)......................................................................... 5

*NFIB v. Dep't of Lab.*,
142 S. Ct. 661 (2022) ................................................................. *passim*

*Panama Refining Co. v. Ryan*,
293 U.S. 388 (1935)................................................................... 17, 18

*Paul v. United States*,
140 S. Ct. 342 (2019) ..................................................................... 30

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*SeaWorld of Fla., LLC v. Perez,*
748 F.3d 1202 (D.C. Cir. 2014).........................................................25

*Seila Law LLC v. CFPB,*
140 S. Ct. 2183 (2020) ....................................................................30

*Tiger Lily, LLC v. HUD,*
5 F.4th 666 (6th Cir. 2021)........................................................12, 32

*United States v. Rife,*
33 F.4th 838 (6th Cir. 2022)...........................................................4, 7

*United States v. Stevens,*
559 U.S. 460 (2010)..................................................................28, 30

*Van Buren v. United States,*
141 S. Ct. 1648 (2021) ....................................................................28

*West Virginia v. EPA,*
142 S. Ct. 2587 (2022) ........................................................16, 17, 19

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001)........................................................5, 7, 28, 31

*Yakus v. United States,*
321 U.S. 414 (1944)..........................................................................5

**STATUTES**

29 U.S.C. § 651 ...............................................................................24

29 U.S.C. § 652 ......................................................................*passim*

29 U.S.C. § 654 ...............................................................................25

29 U.S.C. § 655 ......................................................................*passim*

42 U.S.C. § 264 ...............................................................................11

42 U.S.C. § 7521 .............................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

OTHER AUTHORITIES

*Control of Hazardous Energy Sources (Lockout / Tagout)*,
58 Fed. Reg. 16,612 (Mar. 30, 1993) .................................................. 14

*COVID-19 Vaccination and Testing; Emergency Temporary
Standard*, 86 Fed. Reg. 61,402 (Nov. 5, 2021).................................. 12

Gov't Accountability Office, *Workplace Safety and Health:
Multiple Challenges Lengthen OSHA's Standard Setting*
(2012).................................................................................................. 32

OSHA, *Guidelines for Preventing Workplace
Violence for Healthcare and Social Service
Workers*, OSHA 3148-06R 2016 (2016)............................................ 23

Cass. R. Sunstein, *Is OSHA Unconstitutional?*,
94 VA. L. REV. 1407 (2008) .................................................... 1, 22, 31

## INTRODUCTION

OSHA's brief is most notable for what it does not say. OSHA never contests that the challenged provision, which gives the agency virtually unfettered discretion to write "appropriate" safety rules for nearly every business in America, would qualify as an unconstitutional delegation of legislative power under the original meaning of Article I. It does not deny that neither this Court nor the Supreme Court has ever upheld this sweeping delegation. And it does not seriously dispute that "[n]o other federal regulatory statute confers so much discretion" in an "area with such broad scope," making it "not difficult to distinguish" from delegations previously upheld. Cass. R. Sunstein, *Is OSHA Unconstitutional?*, 94 VA. L. REV. 1407, 1448 (2008).

Instead, OSHA asks this Court to *extend* Supreme Court precedent by blessing the unique delegation here, even though it is far more sweeping than any upheld before. This Court should decline that invitation. Since the delegation is undisputedly unconstitutional under the original meaning of Article I, and since there is no controlling precedent requiring it to be upheld, the Court should follow the Constitution's original meaning and hold this provision invalid.

Even under the modern "intelligible principle" test, authorizing OSHA to make "appropriate" workplace-safety rules is unconstitutional. The agency contends there is an intelligible principle on the premise that the Supreme Court has cabined its rulemaking authority in three ways: The rules must pertain to a workplace, be "feasible," and address a "significant risk." But even assuming all those limits exist, they would not solve the problem. As the D.C. Circuit noted over 30 years ago, these three loose outer "boundaries" on this "exceedingly vague" delegation do not supply any intelligible principle to decide what makes a rule "'appropriate,'" or whether an appropriate rule should be imposed at all. *Int'l Union v. OSHA*, 938 F.2d 1310, 1316-17 (D.C. Cir. 1991). As a result, OSHA has "untrammelled power to dictate the vitality and even survival of whatever segments of American business it might choose." *Id.* at 1318.

Perhaps recognizing this problem, OSHA retreats to insisting that there are "other limitations in the Act" that require it to ensure a high degree of safety in the face of any significant risk. Br. 9. But these supposed "limitations" appear nowhere in the statute, and they cannot plausibly be derived from its text or structure. They are the products of the agency's imagination, not bicameralism and presentment.

Finally, the agency's last-ditch resort to "constitutional avoidance" fares no better. Br. 18. The doctrine of constitutional avoidance is not a license to rewrite the law. To be sure, the Act does need to be amended to save it. But it is for Congress, not the courts, to rewrite it.

## ARGUMENT

## I. PRECEDENT SHOULD NOT BE EXTENDED TO UPHOLD THIS UNIQUELY BROAD DELEGATION OF LEGISLATIVE POWER.

As Allstates explained in its opening brief (at 16-20), the safety-standard delegation would be dead on arrival under the original meaning of Article I because it authorizes OSHA to decide major policy questions and to prescribe generally applicable rules governing future private conduct. The agency offers no response to this fundamental point.

Instead, OSHA accuses Allstates of urging this Court to "'disregard' the Supreme Court's nondelegation precedents," ignore the intelligible principle "test," and "'read tea leaves to predict'" where the Justices "'might end up.'" Br. 22. But that is all false. Allstates has merely asked this Court to "resolve questions about the scope of [existing] precedents in light of and in the direction of the constitutional text and constitutional history." *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *aff'd in part, rev'd in part and remanded*,

561 U.S. 477 (2010); *see* Allstates Br. 28-31. OSHA does not take issue with that approach as a general matter. Nor can it. As this Court has recognized, "the Constitution's original meaning is law, absent binding precedent to the contrary." *United States v. Rife*, 33 F.4th 838, 843-44 (6th Cir. 2022).

"There is no such precedent here." *Id.* at 844. While OSHA makes (Br. 11-12, 19) a passing mention of a few Supreme Court cases it claims to be on point, even a cursory review shows why they are inapposite. The statute in *Mistretta v. United States*, 488 U.S. 361 (1989), for instance, authorized the Sentencing Commission to make sentencing guidelines the Court thought did "not bind or regulate the primary conduct of the public," and it "'set[] out specific directives to govern particular situations.'" *Id.* at 379, 396. That is a far cry from the power to make "appropriate" laws governing virtually every private employer's conduct.

Similarly, the statute in *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946), involved a narrow grant of authority to the SEC to ensure that corporate holding companies were not used to "'unduly or unnecessarily complicate the structure' or 'unfairly or inequitably distribute voting power among security holders.'" *Id.* at 104. That

4

targeted authority was directed toward solving a particular problem involving a "pyramided holding company," and it was constrained by a "veritable code of rules" apparent from statutory context. *Id.* at 103-105. That narrow, "single industry" statute therefore did not remotely give the SEC power to make "'appropriate'" rules governing securities. *Int'l Union*, 938 F.2d at 1317 (distinguishing this case).

OSHA also tries (Br. 11-12) to analogize the present case to *Yakus v. United States*, 321 U.S. 414 (1944), *NBC v. United States*, 319 U.S. 190 (1943), and *Whitman v. American Trucking Ass'ns*, 531 U.S. 457 (2001). But Allstates' opening brief described at length (at 52-58) why those three cases are readily distinguishable—they involved far narrower domains of regulatory authority, and far more specific statutory guidelines for the agency. By entirely ignoring that extensive argument in Allstates' opening brief, OSHA has tacitly conceded the point.

In short, there is no binding precedent that comes anywhere close to upholding such a sweeping delegation. And the cursory analyses in the Seventh and D.C. Circuit decisions that OSHA invokes (Br. 15) are simply wrong. *See* Allstates Br. 59-60.

OSHA also cites (Br. 8) another out-of-circuit case describing the modern intelligible principle doctrine as "not demanding." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020). But as even that decision recognized, modern doctrine also does not require courts to "rubber-stamp all delegations of legislative power." *Id.* at 443. To the contrary, lower courts "'ought not to shy away from [the] judicial duty to invalidate unconstitutional delegations.'" *Id.*

*Big Time Vapes* is also distinguishable. It involved a provision extending the Tobacco Control Act (TCA) to various "tobacco products" that FDA "deem[ed] to be subject to" the law, but where Congress had provided "a controlling definition of 'tobacco product.'" *Id.* at 438, 441, 444 (cleaned up). The Solicitor General therefore told the Supreme Court in opposing review that "the deeming provision" was essentially "the same as a statute that automatically applied the TCA to all products that meet the definition of tobacco product but authorized" FDA "to grant waivers." Br. in Opp. at 25-26, *Big Time Vapes, Inc. v. FDA*, 141 S. Ct. 2746 (2021) (No. 20-850), 2021 WL 1667950. That discrete provision does not come close to the nearly limitless font of lawmaking power here.

More fundamentally, Allstates has never claimed that the delegation here is unconstitutional merely because it allows OSHA "to make 'policy decisions'" of any stripe. OSHA Br. 19. Rather, Allstates' point is that giving OSHA the authority to create "appropriate" workplace-safety rules, 29 U.S.C. § 652(8), does not merely allow the agency "to make judgments of degree," but instead empowers it to supply the very "standard that Congress ha[s] omitted," *Whitman*, 531 U.S. at 473, 475; *see* Allstates Br. 37-38. Indeed, if Congress can delegate to an agency the bald-faced power to make "appropriate" rules across such a broad domain of the national economy, then the basic constitutional requirement of having laws made by the legislature is all but defunct.

Ultimately, OSHA's position appears to be that unless the Supreme Court decides "to revisit the nondelegation doctrine" itself, "lower courts" must uphold any delegation, no matter how capacious, unless it is identical to the two held invalid before. Br. 19-22. But that turns constitutional interpretation on its head. By default, the Constitution's original meaning prevails unless binding precedent requires a contrary result. *Rife*, 33 F.4th at 843-44. And here, no such precedent exists.

## II.    THE ACT DOES NOT PROVIDE AN INTELLIGIBLE PRINCIPLE FOR IMPOSING "APPROPRIATE" WORKPLACE-SAFETY RULES.

As Allstates explained in its opening brief (at 31-64), OSHA's delegated authority to make "appropriate" workplace safety rules is likewise unconstitutional under the modern "intelligible principle" test. In response, OSHA does not deny that the statutory provision would be invalid if it simply authorized the agency to make "appropriate" workplace-safety rules—which is what the Act actually says. To avoid that straightforward result, OSHA makes three arguments for why the provision here is actually more limited than it appears. All of them fail.

*First*, OSHA invokes (Br. 12-14) three constraints it claims the Supreme Court has imposed on its authority. But those constraints are peripheral at best, and they fail to supply any real intelligible basis to decide what makes a workplace safety rule "appropriate."

*Second*, OSHA argues (Br. 17) that it *must* impose workplace safety rules after finding a significant safety risk. But that is directly contrary to the statutory text, which clearly says that the agency "may" impose appropriate workplace safety rules whenever it wishes to do so.

*Third*, OSHA says the statute implicitly requires workplace-safety rules to "'provide a high degree of employee protection.'" Br. 14. But that hopelessly vague standard itself fails to provide any intelligible principle, and in any event it has no basis in the statutory text or structure, which requires nothing more of a rule than that it be "appropriate."

### A. Language from Supreme Court Opinions Cannot Save the Safety-Standard Delegation.

OSHA contends (Br. 12-14) the Supreme Court has already curbed its authority to make workplace-safety rules in three ways. But even if all of the cited Supreme Court opinions contained binding holdings (*but see* Allstates Br. 41-42), the three limits OSHA identifies would not save the delegation here. As the D.C. Circuit recognized, they do not provide "any intelligible principle that could control [OSHA's] discretion" in setting "'appropriate'" safety rules. *Int'l Union*, 938 F.2d at 1317, 1325.

**1.** ***Significant risk.*** OSHA first says (Br. 12-13) that it cannot legislate workplace safety rules without first making a "threshold" finding that "significant risks are present and can be eliminated or lessened by a change in practices." *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 642 (1980) (plurality). But Allstates'

opening brief explained (at 42-43, 47-49) why that precondition cannot save the delegation problem here, and OSHA offers no response to this fundamental point. Instead, it merely quibbles (Br. 13, 16) over whether a Supreme Court majority has adopted this requirement. But even spotting OSHA that premise for argument's sake, the significant-risk requirement still supplies the agency "with 'almost unlimited discretion' to mandate new nationwide rules" so long as they are "'reasonably related' to workplace safety." *NFIB v. Dep't of Lab.*, 142 S. Ct. 661, 668 (2022) (Gorsuch, J., concurring). That is just a wholesale grant of unconstrained legislative power to enact workplace-safety laws.

a.    To start, OSHA does not deny that the significant-risk requirement merely limits *when* it can exercise the legislative power to write "'appropriate'" workplace-safety standards, not *what* those standards can say. Allstates Br. 47. Indeed, the agency has conceded as much, explaining that once it finds "that a significant risk exists that will be substantially reduced through compliance with a new standard, it has 'almost unlimited discretion' in structuring the standard." Br. for Sec'y of Lab. at 29, *Homelite v. OSHA*, 74 F.3d 1232 (4th Cir. 1996) (No. 94-2588), 1994 WL 16048283.

The Constitution demands more. Indeed, the unlawful delegation at issue in *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), itself had a threshold requirement: the President could not adopt a group's proposed "code" unless he first determined that the group had "no inequitable restrictions on admission to membership" and was "truly representative." *Id.* at 538. As the Court explained, that "condition" did not solve the delegation problem because it "relate[d] only to" how "the new laws" could be "initiat[ed]," "not to the[ir] permissible scope." *Id.*

More recently, in defending its ill-fated eviction moratorium, the CDC claimed that a delegation to take measures "necessary to prevent … communicable diseases" contained a sufficient check. 42 U.S.C. § 264(a). According to the CDC, its authority was not "'limitless'" because "'a determination of necessity'" was "'a prerequisite'" to taking action. Resp. in Opp. 20-21, *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021) (No. 21A23), 2021 WL 8939369. Applying the major questions doctrine, the Supreme Court disagreed, explaining that the CDC would have "a breathtaking amount of authority" if "deem[ing] a measure 'necessary'" were the only limit on its power. *Ala. Ass'n*, 141 S. Ct. at 2489. This Court likewise observed that the CDC's reading "could raise a nondelegation

problem" because the precondition of determining a measure "'necessary'" would not meaningfully limit the agency's "near-dictatorial power" to "do anything it can conceive of to prevent the spread of disease." *Tiger Lily, LLC v. HUD*, 5 F.4th 666, 672 (6th Cir. 2021).

**b.** Even as a threshold requirement, the significant-risk criterion provides little check. As OSHA does not deny, it possesses virtually unfettered discretion to determine what is a "'safe'" workplace and what counts as a "risk." Allstates Br. 47. Indeed, OSHA never disavows the power to mandate workplace speech codes, compel measures to reduce employee stress, or outlaw firearms in worksites across the country—all in the name of providing "'safe … places of employment.'" Br. 12; *see* Allstates Br. 47-48. And given that OSHA's asserted domain apparently extends to the home office, it is unclear why the agency would refrain from conscripting employers into enforcing such measures there. *See, e.g.*, *COVID-19 Vaccination and Testing; Emergency Temporary Standard*, 86 Fed. Reg. 61,402, 61,419 (Nov. 5, 2021) ("exempting" employees who exclusively "work from their homes" from the COVID-19 vaccine mandate solely because OSHA had determined these individuals do not face a "grave danger" at work).

Deciding which risks qualify as *significant* is also left to the agency's choice. As OSHA never contests, "its determination that a particular level of risk is 'significant' will be based largely on policy considerations," and the Supreme Court has declined to "reach the issue" of how judges should even begin to "review[]" such value-laden choices. *Indus. Union*, 448 U.S. at 655 n.62 (plurality). At best, the inquiry is highly deferential, as it is "the Agency's responsibility to determine, in the first instance, what it considers to be a 'significant' risk," and OSHA remains free to err "on the side of overprotection." *Id.* at 655-56.

Unsurprisingly, lower courts reviewing significant-risk findings have concluded that their "task is not to 'second-guess an agency decision that falls within a zone of reasonableness' but rather to 'ensure public accountability' by requiring the agency to identify the evidence upon which it relies" and "explain its logic." *Nat'l Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 751-52 (D.C. Cir. 2011). In other words, the significant-risk requirement is merely a *procedural* limit, and therefore "fail[s] to channel agency discretion in the *substantive* manner demanded by the nondelegation doctrine." *Int'l Union v. OSHA*, 37 F.3d 665, 668 (D.C. Cir. 1994) (*Int'l Union II*) (emphasis added).

**2.    *Feasibility.*** OSHA next invokes the limiting principle that its standards must be "'economically' and 'technologically feasible,'" but again, that is hardly a constraint at all. Br. 13; *see* Allstates Br. 42-43. As to *technological* feasibility, the requirement that a standard "be capable of … technological accomplishment" merely prevents OSHA from demanding the "impossible"—something fundamental principles of law *already* forbid. *Am. Textile Mfrs. Inst. v. Donovan*, 452 U.S. 490, 514 (1981); *see Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 161 (D.C. Cir. 2017) ("*Ought* implies *can*. That is, in order for law … to command the performance of an act, that act must be possible to perform.") (footnote omitted).

And even this (redundant) limit just raises another question: Impossible for whom? Is it the "'typical'" employer? *Nat'l Mar.*, 649 F.3d at 752. Or the most technologically sophisticated one? The statute does not say. And for its part, OSHA has long taken the view that its standards can "force employers with inefficient and unsafe workplaces to either modernize … or go out of business." *Control of Hazardous Energy Sources (Lockout/Tagout)*, 58 Fed. Reg. 16,612, 16,616 (Mar. 30, 1993).

The Act is equally silent when it comes to *economic* feasibility. While this Court has decided that a "standard is economically feasible if the costs it imposes do not threaten massive dislocation to, or imperil the existence of, the industry," *In re MCP No. 165*, 21 F.4th 357, 383 (6th Cir. 2021) (cleaned up), the statute says no such thing and the Supreme Court has reserved the question, *Am. Textile*, 452 U.S. at 530 n.55. In any event, whether OSHA can end an industry entirely or bring it "to the verge of economic ruin" is immaterial, *Int'l Union*, 938 F.2d at 1317; either way, such a peripheral restraint is not an intelligible principle that tells the agency how to choose among the near-infinite universe of feasible rules.

While OSHA notes that courts have "enforced" the feasibility requirement, its two examples only prove that this alleged constraint is merely *procedural* rather than *substantive*. Br. 17. In both cases, the courts remanded the matter to the agency merely due to a lack of "substantial evidence" to support OSHA's own conclusions, rather than a failure to meet a *substantive* feasibility standard in the Act. *See Nat'l Grain & Feed Ass'n v. OSHA*, 866 F.2d 717, 738-40 (5th Cir. 1988) ("The industry does not challenge OSHA's [feasibility] conclusion as a matter of policy, but challenges, rather, the facts upon which it is based."); *Nat'l*

*Mar.*, 649 F.3d at 753 (noting that the challenged standard "is almost devoid of a feasibility analysis" and that there is a "lack of record evidence regarding feasibility").

In any event, even if Congress had set forth a substantive feasibility standard, it still would not supply an intelligible principle. This Court's conclusion that the COVID-19 vaccine mandate was "economically feasible," *MCP No. 165*, 21 F.4th at 383, for instance, did not change the fact that if OSHA "really *did*" possess the power to issue such a major rule, the Act would "likely constitute an unconstitutional delegation of legislative authority," *NFIB*, 142 S. Ct. at 669 (Gorsuch, J., concurring).

In fact, the Supreme Court recently rejected a similar argument in *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), where the agency claimed authority "to order the wholesale restructuring of any industrial sector based only on its discretionary assessment of such factors as cost and feasibility." *Id.* at 2605 (cleaned up). The dissent claimed that the need to "[t]ake into account costs" was a "meaningful constraint[]" on the agency's authority. *Id.* at 2629 & n.1 (Kagan, J., dissenting). But the Court held that this would be an "'unprecedented power over American industry.'" *Id.* at 2612 (majority). Indeed, barring "'exorbitantly costly'"

measures did not seriously "*limit* the breadth of [the agency's] claimed authority," since the agency itself would decide, at least in the first instance, what counted as "unreasonably 'exorbitant'"—a "vital consideration[] of national policy" in its own right. *Id.*

**3.    *Workplace Scope.*** Finally, OSHA notes (Br. 13-14) that it can enact only "*workplace* safety standards" rather than "broad public health measures" such as its recent COVID-19 vaccine mandate. *NFIB*, 142 S. Ct. at 665. But a statutory directive telling an agency to regulate within a particular field does not supply an intelligible principle for what the regulations within that field should be. Otherwise, Congress could simply replace the Internal Revenue Code with a command to the IRS to "promulgate reasonably necessary or appropriate tax regulations."

If there were any doubt on this point, *Panama Refining Co. v. Ryan,* 293 U.S. 388 (1935), held unlawful a delegation that likewise "defined" "[t]he subject" of the President's authority, even though the field defined was *narrower* than the one here. *Id.* at 414. In that case, the President had power over the niche area of "transportation in interstate and foreign commerce of petroleum and petroleum products which are produced or withdrawn from storage in excess of the amount permitted by state

authority." *Id.* at 414-15. Here, OSHA has standardless rulemaking authority over "the workplace"—which touches the lives of "most Americans." *NFIB*, 142 S. Ct. at 665. Specifying that OSHA's power is "limited" to this vast domain does not somehow supply an intelligible principle for the rules the agency makes. *Id.*

Indeed, OSHA's inability to stray beyond the workplace did nothing to alleviate the nondelegation concerns of the *Industrial Union* plurality. As OSHA notes (Br. 18-19), those Justices thought that without a significant-risk requirement, even the Act's more detailed health-standard delegation might qualify as "unconstitutional." 448 U.S. at 646 (plurality). And they reached that conclusion even though the health standard at issue addressed "occupational exposure to benzene" and therefore fell squarely within OSHA's wheelhouse. *Id.* at 611. Had the Act's workplace-safety limit been a meaningful constraint, there would have been no need to layer the significant-risk requirement on top.

In other words, while limiting OSHA to occupational hazards may be *necessary* to satisfy the nondelegation doctrine, it is not *sufficient* to do so. Rather, that doctrine (like the "major questions doctrine" that travels with it) applies even when an agency adheres to its

"congressionally assigned mission." *West Virginia*, 142 S. Ct. at 2623 & n.5 (Gorsuch, J., concurring) (noting that *Industrial Union* involved a "workplace safety agency regulating workplace carcinogens").

*    *    *

Decades ago, the D.C. Circuit held—in a decision OSHA does not even cite—that OSHA's workplace-safety-standard authority posed "a serious nondelegation issue" notwithstanding the three "boundaries" the agency posits here. *Int'l Union*, 938 F.2d at 1317 (explicitly addressing significant-risk and feasibility requirements); *see In re MCP No. 165*, 20 F.4th 264, 274 (6th Cir. 2021) (Sutton, C.J., dissenting from the denial of initial hearing en banc) (explaining that "the D.C. Circuit" had held in the 1980s that the Act applies "only to dangers arising out of 'work or work-related activities'"); Allstates Br. 42-43. As that court explained, these limits still left OSHA with the "power, once significant risk is found, to require precautions that take the industry to the verge of economic ruin (so long as the increment reduces a significant risk), or to do nothing at all." *Int'l Union*, 938 F.2d at 1317 (internal citation omitted). That is an unconstitutional delegation.

To be sure, the D.C. Circuit later upheld the delegation because "the agency reads the Act" to impose a mandate: According to OSHA's new theory "set forth on remand," whenever a "'significant' safety risk" exists, the Act requires it to adopt a safety standard that provides "'a high degree of worker protection.'" *Int'l Union II*, 37 F.3d at 667, 669. As explained below, however, that limiting construction conflicts with the statute and would not solve the delegation problem anyway. *See infra* Pts. II.B-III.

## B. OSHA's Authority To Impose "Appropriate" Safety Standards Is Discretionary, Not Mandatory.

Renewing its claim from *International Union II*, OSHA contends (Br. 17) the Act requires it to set a safety standard whenever a significant safety risk exists. According to OSHA, the Act forbids it "to 'do nothing at all' in the face of a significant risk," because "a failure to regulate under such circumstances would be a failure to do what is reasonably necessary or appropriate to provide safe places of employment." *Id.* (cleaned up).

The problem with OSHA's reading is that it is flatly contrary to the statutory text. The Act does not contain any mandatory duty "to do what is reasonably necessary or appropriate to provide safe places of employment." Rather, the Act expressly provides that OSHA "*may* by

rule promulgate, modify, or revoke any occupational safety or health standard," 29 U.S.C. § 655(b) (emphasis added). And the relevant definition says only that these discretionary standards should be "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." *Id.* § 652(8). Nothing about that *discretionary* grant of authority imposes a *duty* to regulate.

Indeed, the remainder of the Act confirms that Congress knows how to mandate such an obligation when it wishes to do so. For example, the Act directs that "if [OSHA] determines," among other things, the existence of a "grave danger," then the agency "*shall* provide … for an emergency temporary standard to take immediate effect" and "*shall* promulgate" a permanent standard six months later. *Id.* § 655(c) (emphases added). Similarly, the Act provides that OSHA "shall," within two years of the Act's effective date, "promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard," absent an exception. *Id.* § 655(a). Especially given this contrast, the Act's clear "discretionary words" cannot plausibly be read as "mandatory ones" when it comes to adopting permanent safety standards. *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018).

Lacking a foothold in the text, OSHA invokes a law review article that makes the same mistake. Br. 17. That article claims OSHA's safety-standard delegation is "analogous to the Clean Air Act" provision construed in *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007). Sunstein, *supra*, at 1435. But that provision stated EPA "*shall* by regulation prescribe … standards applicable to the emission of any air pollutant." 42 U.S.C. § 7521(a)(1) (emphasis added). Based on that *mandatory* language, *Massachusetts* held EPA was "require[d]" to "regulate emissions of [a] deleterious pollutant." 549 U.S. at 533. Again, no such mandatory language exists here.

In fact, OSHA has previously taken the opposite position. In defending against a failure-to-regulate challenge in the area of health standards—a context where the Act commands that the agency "shall set" the most protective standard "feasible," 29 U.S.C. § 655(b)(5)—OSHA explained that "[e]ven if" it "were to determine … that [particular] risks are significant," that would not "compel [it] to undertake rulemaking on" those hazards. Br. for Sec'y of Lab. at 36, *Int'l Union v. Chao*, 361 F.3d 249 (3d Cir. 2004) (No. 03-4146), 2003 WL 25295671. The Third Circuit evidently agreed, calling it "obvious that OSHA cannot lightly be

required to initiate a rulemaking," as "'[t]here are likely thousands of substances that may pose a significant risk of harm to workers'" and "'OSHA could not possibly be required to undertake rulemaking on all of them simultaneously.'" *Chao*, 361 F.3d at 254. The same is true when it comes to hazards falling outside the scope of § 655(b)(5). For example, OSHA has determined that "[h]ealthcare and social service workers face significant risks of job-related violence," yet it has relied exclusively on "voluntary guidelines" to address this concern. OSHA, *Guidelines for Preventing Workplace Violence for Healthcare and Social Service Workers* 1, OSHA 3148-06R 2016 (2016), https://bit.ly/3Xh8ljy.

In all events, even if the Act did preclude OSHA from "'ignor[ing] a significant risk,'" OSHA Br. 17, it still would not provide any guidance on what the "appropriate" response would be, 29 U.S.C. § 652(8). So long as OSHA required *something feasible*, it would retain the ability "to roam between the rigor of [§ 655(b)(5)] standards and the laxity of unidentified alternatives." *Int'l Union*, 938 F.2d at 1317. And because "the power to vary the stringency of the standard is the power to decide which firms will live and which will die," this purported floor would—on the D.C. Circuit's own logic—do nothing to cure the problem here. *Id.* at 1318.

23

### C.    The Statute Does Not Require Safety Rules To Provide a "High Degree" of Protection.

In an attempt to manufacture some intelligible principle, OSHA claims that any "appropriate" safety standard "must 'provide a high degree of employee protection.'" Br. 14. But Allstates has already explained why this supposed limit is entirely contrived. Allstates Br. 43-44, 49-52. It has no basis whatsoever in the text or structure of the statute, and OSHA fails to show otherwise. Indeed, the agency does not try to unpack what "a high degree of employee protection" even means, or how it would supply an intelligible principle even if grounded in the statute.

OSHA attempts to infer its "high degree of protection" standard from the Act's general statement of purpose to "assure *so far as possible* … safe and healthful working conditions." 29 U.S.C. § 651(b) (emphasis added). But as Allstates' brief explained (at 49-51), that general statutory purpose cannot provide the guiding principle here for multiple reasons. For one thing, OSHA itself disclaims any mandatory duty to impose safety standards that are as stringent as possible. *See Int'l Union II*, 37 F.3d at 669 (noting OSHA's position that it can "deviate" from the safest standard feasible).

24

For another, the Act already imposes a "safe as possible" requirement for a distinct subset of OSHA standards. In § 655(b)(5), "Congress specifically chose … to impose separate and additional requirements for issuance of a subcategory of occupational safety and health standards dealing with toxic materials and harmful physical agents: it required that those standards be issued to prevent material impairment of health *to the extent feasible*." *Am. Textile*, 452 U.S. at 512. If the same requirement existed for *all* standards under § 652(8), then that "would effectively write" § 655(b)(5) "out of the Act." *Id.* at 513.

OSHA also points to the Act's General Duty Clause, which compels employers to provide a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm." 29 U.S.C. § 654(a)(1). But that "residual" provision merely covers the risks left unaddressed by OSHA's "standards"; it cannot limit the agency's power to adopt those standards in the first place. *SeaWorld of Fla., LLC v. Perez*, 748 F.3d 1202, 1217 (D.C. Cir. 2014) (Kavanaugh, J., dissenting). In any event, "the Clause's vague terms" pose little check, as they have not stopped OSHA from claiming the authority "to eliminate" longstanding and familiar practices such as "the whale show at SeaWorld." *Id.* at 1222.

25

Finally, OSHA relies on a provision directing that, within "two years of the statute's enactment," the agency was to adopt pre-existing standards, and, "in the event there was more than one such standard," to choose "'the standard which assures the greatest protection.'" Br. 14 (quoting 29 U.S.C. § 655(a)). But again, that specific delegation (not challenged here) does not remotely support an inference that OSHA's general authority to make "appropriate" safety rules must provide a "high degree" of employee protection. OSHA's argument to the contrary is just wishful thinking in the guise of statutory interpretation.

The same is true of the provision saying that OSHA cannot make a new rule in an area with an existing consensus standard unless it explains why the new rule "will better effectuate the purposes of" the Act. 29 U.S.C. § 655(b)(8). For one thing, that provision says nothing about the agency's rulemaking authority in areas with no pre-existing standard. And for another, the procedural requirement to explain why a rule better serves the "'purposes'" of the Act is not any substantive constraint at all— much less a specific constraint to provide a "'high degree'" of protection. *See* Allstates Br. 51-52. That remains true even if this provision could be read to "impose" a "duty to find that an existing national consensus

standard is not adequate to protect workers from a continuing and significant risk of harm," as OSHA never explains how courts are to measure a "find[ing]" that an existing standard was "not adequate" to address a "significant risk" against any intelligible principle in the Act itself. *Indus. Union*, 448 U.S. at 644 (plurality); *see* OSHA Br. 17-18.

The lack of any statutory basis for OSHA's claimed "'high degree of protection'" standard should come as no surprise, as it was evidently concocted over two decades after the Act's passage in response to the D.C. Circuit's identification of the nondelegation problem. Allstates Br. 39-44. Before then, the agency's interpretation was that "whatever OSHA chooses" for a safety standard is permissible, "so long as it is not infeasible." *Int'l Union*, 938 F.2d at 1324. And before that, OSHA's view was that "the phrase 'reasonably necessary or appropriate' is not a limitation on its powers or a substantive standard of any sort." Allstates Br. 1 (cleaned up); *see id.* at 39-42. OSHA never even acknowledges this history, let alone articulates why its newfound interpretation could be correct.

### III. CONSTITUTIONAL AVOIDANCE CANNOT SAVE THE ACT.

**A.** With the statute against it, OSHA falls back on the canon of "constitutional avoidance," insisting this Court must adopt any "available" reading of the Act to salvage the delegation here. Br. 18-19. But constitutional avoidance does not outrank the "obligation faithfully to interpret the law," and courts "cannot embrace a narrow" reading "simply because it is narrow; it must also be right." *Citizens United v. FEC*, 558 U.S. 310, 375 (2010) (Robert, C.J., concurring).

"The canon of constitutional avoidance," like *Chevron* deference, therefore "'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). In other words, it is only when "text, context, and structure" run out that "constitutional avoidance" can be considered. *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021). And at that point, the statute must be "readily susceptible" to the proffered "limiting construction." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (cleaned up). "No matter how severe the constitutional doubt, courts may choose only between reasonably available interpretations of a text." *Whitman*, 531 U.S. at 471.

Given the statutory text and structure, OSHA's reading is not a "plausible construction" of the Act. *Jennings*, 138 S. Ct. at 842; *see supra* Pt. II.B-C. There is simply no way to fairly get from a discretionary authorization to write "reasonably necessary or appropriate" workplace-safety standards, 29 U.S.C. § 652(8), to a requirement "to enact a safety standard that provides 'a high degree of worker protection,'" which means the agency can "deviate only modestly from the stringency required by [§ 655(b)(5)] for health standards," *Int'l Union II*, 37 F.3d at 669.

**B.**    While OSHA observes that courts have used "the major questions doctrine to avoid a potential nondelegation problem" in various statutes, Br. 19, that "'vital check on expansive and aggressive assertions of *executive* authority'" applies only when an "*agency*" tries "to exploit some gap, ambiguity, or doubtful expression in Congress's statutes," *NFIB*, 142 S. Ct. at 669 (Gorsuch, J., concurring) (emphases added). "The nondelegation doctrine," by contrast, bars "*Congress* from intentionally delegating its legislative powers" in the first place. *Id.* (emphasis added).

Therefore, where "Congress expressly and specifically delegates" the "authority to decide major policy questions" to an agency—which, as OSHA does not deny, is the case here—courts must answer whether the

Constitution permits that legislative choice. *Paul v. United States*, 140 S. Ct. 342, 342 (2019) (Kavanaugh, J., statement respecting denial of certiorari); *see* Allstates Br. 21-22. This Court should "take Congress at its word" when it seeks to test the separation of powers, not "rewrite Congress's work to say whatever the Constitution needs it to say in a given situation." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2207 (2020).

**C.**     If anything, courts should be particularly wary of aggressive uses of the avoidance canon in facial nondelegation challenges. Allstates Br. 64. One of the key roles of the nondelegation doctrine is to check the congressional temptation "to delegate power to agencies to 'reduc[e] the degree to which they will be held accountable for unpopular actions.'" *NFIB*, 142 S. Ct. at 669 (Gorsuch, J., concurring); *see* Allstates Br. 17-18. A judicial practice of "rewriting" delegations of lawmaking power, however, would "'sharply diminish Congress's 'incentive to draft a narrowly tailored law in the first place.'" *Stevens*, 559 U.S. at 481 (making point in the First Amendment context). Congress could freely enact standardless grants of authority, safe in the knowledge that courts could always pare back as necessary (and take the blame for doing so).

In fact, an attempt to "cure an unlawful delegation of legislative power by adopting … a limiting construction of the statute" risks devolving into an impermissible exercise of legislative power of its own. *Whitman*, 531 U.S. at 472; *see* Allstates Br. 64. Where, as here, "the standard legal materials le[ave] both court and agency at sea," adopting a "narrower interpretation" merely to "rescue a statute from a nondelegation challenge" would "not qualify as an interpretation at all." Sunstein, *supra*, at 1446. Rather, the "choice of which portion of" an "unconstitutionally standardless delegation" an agency can "exercise— that is to say, the prescription of the standard that Congress had omitted—would *itself* be an exercise of the forbidden legislative authority." *Whitman*, 531 U.S. at 473.

**D.**    OSHA insinuates that rewriting the Act is necessary to save "numerous" safety standards, but conspicuously fails to quantify how many. Br. 22. Nor does it dispute that a ruling for Allstates would leave in force all of OSHA's health standards and most of its safety standards, which were predominantly issued as consensus standards under § 655(a). Allstates Br. 61-62. While OSHA quibbles that it has used § 655(b) to "update, improve, and expand on" its consensus standards, Br. 23, it

31

cannot deny that the "vast majority of these standards have not changed since originally adopted," Gov't Accountability Office, *Workplace Safety and Health: Multiple Challenges Lengthen OSHA's Standard Setting*, GAO-12-330, at 6 (2012), https://bit.ly/3DuULRB; *see* Allstates Br. 62.

As for the remainder, "many [§ 655(b)] safety standards" merely "reorganize or reword safety requirements that were imposed under [§ 655(a)]." AFL-CIO Br. 25. It is far from clear why such cosmetic revisions would need to be set aside given that "[t]he Constitution deals with substance, not shadows." *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325 (1866); *cf. Edison Elec. Inst. v. OSHA*, 849 F.2d 611, 620 (D.C. Cir. 1988) (ruling that the significant-risk requirement "is inapplicable here because the agency's rewording of an existing regulation leaves the meaning of that regulation unchanged"). And the more substantive uses of § 655(b) could be adopted as legislation by Congress or the States. Allstates Br. 63; *see* Illinois Br. 16 (noting "many States … have assumed substantial responsibility for ensuring workplace safety within their jurisdictions"). The key difference is that Americans "'would know, without ambiguity, whom to hold accountable for the laws they would have to follow.'" *Tiger Lily*, 5 F.4th at 675 (Thapar, J., concurring).

## CONCLUSION

This Court should reverse the district court's judgment and remand with instructions to enter judgment in favor of Allstates.

Date: February 13, 2023

Respectfully submitted,

/s/ Brett A. Shumate

Christopher M. McLaughlin
JONES DAY
North Point, 901 Lakeside Ave.
Cleveland, OH 44114
(216) 586-3939
cmmclaughlin@jonesday.com

Donald F. McGahn II
Brett A. Shumate
John M. Gore
Anthony J. Dick
Brinton Lucas
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
bshumate@jonesday.com

J. Benjamin Aguiñaga
JONES DAY
2727 N. Harwood St.
Dallas, TX 75201
(214) 220-3939
jbaguinaga@jonesday.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,484 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Century Schoolbook Standard style, 14 point font.

February 13, 2023                         /s/ Brett A. Shumate
                                          Brett A. Shumate

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2023, I electronically filed the original of the foregoing brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

/s/ Brett A. Shumate
Brett A. Shumate